AMERICAN MACHINE & METALS, Inc. v.
DE BOTHEZAT IMPELLER CO., Inc.
No. 129, Docket 20816.

Circuit Court of Appeals, Second Circuit.

March 10, 1948.

Alphonse Kenison, of New York City (Leonard P. Moore and Charles Pickett, both of New York City, of counsel), for appellant.

Royal E. Mygatt, of New York City (Watson Washburn, of New York City, of counsel), for appellee.

Before SWAN, CHASE and FRANK, Circuit Judges.

SWAN, Circuit Judge.

This appeal presents a question under the Declaratory Judgment Act, 28 U.S.C.A. § 400, which authorizes the courts of the United States "in cases of actual controversy" to declare "rights and other legal relations of any interested party petitioning for such declaration," without regard to whether further relief is or could be sought. Before answering the complaint, the defendant moved, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723, for dismissal of the action on the ground that (a) the complaint fails to state a claim upon which relief can be granted, and (b) the court lacks jurisdiction because there is no matter in controversy between the parties. This motion was granted for the reason, as we read the district court's opinion, that the facts alleged in the complaint did not show the existence of an "actual controversy." From the judgment of dismissal the plaintiff has appealed.

In summary the allegations of the complaint are the following:

In 1934 the parties entered into a contract under which the defendant conveyed to the plaintiff certain patents and certain physical equipment for the making of fans and other products and the plaintiff agreed to pay the defendant license fees (not less than $5,000 annually) based on the "net sales" of its products. So long as the contract continued the fees were to be paid on "net sales" regardless of whether the plaintiff's products were covered by the patents or whether the patents had expired. The contract contained no expiration date but could be terminated at any time by the plaintiff on six months' notice. In the event of such termination the plaintiff was to transfer the patents back to the defendant and to cease using the name "De Bothezat," which it agreed to use in its literature and sales promotion while the contract con-

tinued. Since February 19, 1946 the plaintiff has neither manufactured nor sold any product for which possession of the patents is essential. The plaintiff "desires and intends" to exercise its right of termination under the contract and "desires and intends" to continue in the business of selling fans and ventilating equipment. The defendant at various times has made claims and assertions to the plaintiff and other persons to the effect that upon termination of the contract the plaintiff will no longer have the right to continue the manufacture of fans and ventilating equipment, and "has led plaintiff to believe" that upon termination of the contract defendant will sue plaintiff if it does not cease the manufacture and sale of fans and ventilating equipment. Said claims and assertions by defendant "are without basis and an actual controversy exists between the parties," and plaintiff seeks a declaration of the rights of the parties in order to avoid the possible accrual of avoidable damages. The prayer requests a declaration "particularly with respect to the proper interpretation and effect of the agreement" and that the court declare the right of plaintiff to continue to manufacture and sell fans and other noninfringing products after termination of the agreement and without the payment of further sums to defendant.

In concluding that no controversy exists the district judge noted that the plaintiff has not yet given notice of termination of the contract and may never do so; the opinion states [75 F.Supp. 421, 424]:

"In this case, if the court should decide that plaintiff might terminate and continue its manufacture and sale of products other than those covered by patents, plaintiff might and probably would terminate. If the court should decide otherwise, plaintiff would probably continue under the agreement until its termination and no controversy such as now claimed to exist might ever be present. In other words, plaintiff has not elected what it wishes to do and its action might and could render academic the very declaration which it seeks.

"The complaint is, therefore, dismissed because no justiciable controversy exists which would justify the maintenance of an action under the Declaratory Judgment Statute. The relief prayed for should not be granted at this time either as a matter of discretion or otherwise."

■ We think the judge construed the statute too narrowly. As the Supreme Court said in Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826, the difference between an abstract question and a "controversy" is one of degree. If notice of termination had been given, the defendant apparently concedes that there might be an actual controversy, although even after termination it would still be optional with the plaintiff whether to continue the business and an adverse decision would probably induce him not to continue. Before termination, the controversy is one step further removed from actuality but not so far removed as to present only an abstract question, in our opinion. Once the notice of termination is given, it is beyond recall; the dispute between the parties concerns the right of the plaintiff to continue business if that contingency happens. Where there is an actual controversy over contingent rights, a declaratory judgment may nevertheless be granted. Pennsylvania Casualty Co. v. Upchurch, 5 Cir., 139 F.2d 892, 894; Franklin Life Ins. Co. v. Johnson, 10 Cir., 157 F.2d 653, 658; Sigal v. Wise, 114 Conn. 297, 158 A. 891, 892, 893; Borchard, Declaratory Judgments, pp. 422-3. In Sigal v. Wise, supra, the tenant of premises destroyed by fire sought a declaration of his right to use the premises if the landlord should rebuild. Although the right claimed was contingent, the court thought that "its present determination may well serve a very real practical need of the parties for guidance in their future conduct." There, it is true, the contingency was within the control of the defendant, not of the plaintiff as here, but that does not seem to be a material distinction. After bringing the contingency to pass it will be too late to avoid an action for damages if the plaintiff acts as he intends by continuing the business. The very purpose of the declaratory judgment procedure is to prevent the accrual of such avoidable damages. This procedure has long been recognized in the

law of Scotland and we may well be guided by Lord Justice Dunedin's opinion in Russian C. & I. Bank v. British Bank (1921), 2 A.C. 438, 448. There the British bank had obtained a loan from the Russian bank and pledged securities to protect the lender. In order to decide whether to exercise its privilege of redeeming the pledged securities, the British bank wanted to know whether the loan was repayable in rubles or sterling—a question on which the parties were in dispute. Lord Dunedin was of opinion that the case was an appropriate one for a declaratory judgment even though it was probable that if sterling was declared to be the required currency the British bank would not exercise its privilege of redemption. This seems indistinguishable from the case at bar. Also pertinent are Altvater v. Freeman, 319 U.S. 359, 63 S.Ct. 1115, 87 L.Ed. 1450, and Sola Electric Co. v. Jefferson Electric Co. 317 U.S. 173, 63 S.Ct. 172, 87 L.Ed. 165. In the latter case the Supreme Court permitted a patent licensee to seek a declaratory judgment as to the validity of certain patents without previously relinquishing its rights under the license.

Johnson v. Interstate Transit Lines, 10 Cir., 163 F.2d 125, and Perlberg v. Northwestern Mut. Life Ins. Co., E.D.Pa., 62 F.Supp. 76, relied upon by the appellee, did not involve such an irrevocable choice as the termination of the contract presents to the plaintiff in the case at bar. Failure to declare his seniority rights did not seriously affect the employee in the Johnson case, since he was not threatened with immediate loss of employment or status; and the insured in the Perlberg case, seeking a declaration as to the consequences of a default, would have been able even in the event of a default to reinstate his policy without penalty, or failing that to receive paid-up insurance or the cash surrender value. By the decision below the appellant here must "act on his own view of his rights" and risk an otherwise profitable business in order to present a justiciable "controversy." The Declaratory Judgments Act was designed to obviate just this sort of peril, and we believe its benefits should be available to one in the appellant's situation. S.Rep.No.1005, 73d Cong., 2

Sess., pp. 2-3; Borchard, Declaratory Judgments, pp. 58, 930.

Judgment reversed and cause remanded for trial on the merits.