### TOWN OF SOUTHBRIDGE *vs.* SOUTHBRIDGE WATER SUPPLY COMPANY.

Worcester.    April 8, 1976. — October 15, 1976.

Present: REARDON, QUIRICO, KAPLAN, & WILKINS, JJ.

*Southbridge Water Supply Company.    Declaratory Judgment.    Public Utilities.    Words,* "Actual cost."

This court exercised its discretion broadly in granting declaratory relief to the town of Southbridge and the Southbridge Water Supply Company respecting a question arising as to the meaning of "actual cost" under St. 1880, c. 73, § 7, where the town was merely investigating the possibility of purchasing the company and had not yet been authorized by its town meeting to purchase it. [213-215]

The term "actual cost" under St. 1880, c. 73, § 7, was to be determined by the customary formula employed by the Department of Public Utilities in computing a water company's rate base, but including an amount equal to the cost incurred by the company for plant under construction at the time of purchase by the town. [215-217]

BILL IN EQUITY filed in the Supreme Judicial Court for the county of Suffolk on July 18, 1973.

Following transfer to the Superior Court, the case was heard on demurrer by *Meagher*, J., and reported by him to the Appeals Court. The Supreme Judicial Court granted a request for direct review.

*Robert W. Meserve* for the plaintiff.

*Mark A. Michelson* for the defendant.

QUIRICO, J.   In this case the plaintiff town of Southbridge (town) seeks declaratory relief pursuant to G. L. c. 231A relating to its right under St. 1880, c. 73, § 7, "to purchase the corporate property and all the rights and privileges of . . ." the defendant Southbridge Water Supply Company (company) "at the *actual cost* of the same, or if mutually agreed upon . . . at a less price . . ." (emphasis supplied). The town alleges that there is an actual controversy between the parties over the meaning of the term "actual cost" in St. 1880, c. 73, § 7, and requests relief principally in the nature of a decree defining "actual cost" within the meaning of the statute. The case was commenced in this court for the county of Suffolk and thereafter transferred to the Superior Court (in Worcester) by order of a single justice of this court pursuant to G. L. c. 211, § 4A, as amended by St. 1972, c. 740, § 2. The company filed a demurrer to the town's petition for declaratory relief, which was overruled by a judge of the Superior Court, and an answer. Thereafter, at the request of the parties, the judge reported the case to the Appeals Court " (a) on the propriety of the order . . . overruling the [company's] demurrer, and (b) on the petition, answer and stipulation of material facts entered into by the parties . . . ." Mass. R. Civ. P. 64, 365 Mass. 831 (1974). G. L. c. 231, § 111, as amended by St. 1973, c. 1114, § 199. We granted the application for direct appellate review jointly requested by the parties. G. L. c. 211A, § 10 (A), inserted by St. 1972, c. 740, § 1. We hold that there exists a controversy on which we are permitted to make a general declaration of right under G. L. c. 231A, and further that "actual

cost" under St. 1880, c. 73, § 7, is to be determined by a formula which is substantially the same as that employed by the Department of Public Utilities in computing the rate base for rate setting purposes.

We summarize the pertinent facts on which the parties have reached agreement for the purposes of this case. The company is a corporation chartered in the Commonwealth by special act, St. 1880, c. 73, and presently engaged in the business of furnishing the inhabitants of the towns of Southbridge and Charlton in the Commonwealth with water for domestic, industrial, commercial and other purposes, including fire protection. Its assets consist of real estate, both land and buildings, which is primarily reservoir property located in the Commonwealth and in the State of Connecticut, substantial personal property, including pumping facilities, purification equipment, mains, pipes, meters and hydrants, which make up its distribution system, and certain other investments, or assets, such as treasury bonds and certificates of deposit. These assets have been acquired by the company at various times since its incorporation in the year 1880. Some of the personal property making up the company's distribution system was acquired not through investment of its own capital, but as a result of "contributions" from customers of the company for extensions of water lines to their properties. The company also has certain receivables as well as both long term and current liabilities.

Since July, 1923, the company has been required to keep, and has kept, its books and accounts, and has filed returns for each year in accordance with the Uniform Classification of Accounts for Water Companies (1923), the form prescribed by the Department of Public Utilities under G. L. c. 164, § 81, and made applicable to the company by G. L. c. 165, § 2, as amended through St. 1973, c. 860, § 24. The company's first annual return thereunder made in 1923 "reflected book value, *i.e.*, original purchase cost of each item less accrued depreciation, for the ... Company's tangible property in its system at that time. Since 1923, all additions to the ... Company's tangible

property, as reflected in its Annual Returns, have been entered at the original purchase cost of each item."

On March 29, 1971, at the annual town meeting, the town's board of selectmen was authorized by a majority vote to appoint a committee of six members to be known as the "Town Water Supply Committee" (committee) whose purpose was "to study the possibility of purchasing the ... Company pursuant to [St. 1880, c. 73, § 7[1]] and as a result of that study to make a recommendation to a future town meeting." On October 26, 1971, the chairman of the committee at that time wrote a letter to the president of the company, requesting "that you advise us of the purchase price to the Town ... for the ... Company under the terms of your charter as originally granted." The president responded by letter dated December 20, 1971, stating that the company's charter "provided for the payment of the 'actual cost' of the Company," and that "[w]e find that we are presently unable to determine the 'actual cost' of the Company as it stands today, and that to do so will involve extensive investigation of records and much time and expense." The letter concluded with the statement that the company "shall be glad to discuss the problems of what expenditures of time and money on our part and on your part are justified in arriving at figures for your report and recommendations to the Town."

At a special town meeting on October 25, 1972, it was voted that the committee negotiate with the company to ascertain the purchase price of the company's corporate

---

[1] Section 7 of St. 1880, c. 73, provides as follows: "The town of Southbridge and any fire district that may be established, shall have the right at any time during the continuance of the charter hereby granted, to purchase the corporate property and all the rights and privileges of said company at the actual cost of the same, or if mutually agreed upon between said corporation and said town or any fire district which may be hereafter established in said town, at a less price; and said corporation is hereby authorized to make sale of the same to said town or such fire district; but such authority to purchase said franchise and property is granted to said town upon the condition that the same is assented to by said town by a two-thirds vote of the voters present and voting thereon at any annual meeting or at a legal meeting called to act on that subject."

property, rights and privileges at "actual cost" under St. 1880, c. 73, § 7, and to establish the terms and conditions of such a purchase. On March 13, 1973, two members of the committee met with the president of the company for that purpose. The committee members there asserted the town's position that "actual cost" under the statute must be defined as "plant investment less accrued depreciation and less contributions for extensions." As stated in the parties' stipulation of material facts, the company "did not at that time, nor does it presently, accept this as an appropriate definition of the term 'actual cost' as used in [St. 1880, c. 73, § 7]."

The parties to the present date have failed to agree on a specific purchase price or on a definition of "actual cost" under St. 1880, c. 73, § 7. In addition, there has been no assent by the town, by a two-thirds vote of the voters present and voting thereon at any annual meeting or at a legal meeting called to act on the subject, authorizing the purchase of the company's franchise and property, as required by St. 1880, c. 73, § 7.

1. We are faced with the threshold question, raised by the company's demurrer and the overruling thereof by the Superior Court judge, whether in the circumstances of this case declaratory relief is appropriate under G. L. c. 231A. Section 1 of that statute provides in pertinent part that the Superior Court, within its respective jurisdiction, "may on appropriate proceedings make binding declarations of right, duty, status and other legal relations sought thereby, either before or after a breach or violation thereof has occurred in any case *in which an actual controversy has arisen* and is specifically set forth in the pleadings . . ." (emphasis supplied). The company contends that such relief is not appropriate in this case; that the town's petition therefor "is premature and insufficient, seeks an advisory opinion merely, and fails to show an actual justiciable controversy"; and further that its demurrer should have been sustained. The company bases its contention on the fact that the town has not authorized the purchase of the company "by a two-thirds vote of the voters present and

voting thereon" at a town meeting, such vote being re-
quired to assert the town's right to purchase the company's
franchise and property. St. 1880, c. 73, § 7. *Rockport Water
Co.* v. *Rockport,* 161 Mass. 279, 280 (1894). *Braintree
Water Supply Co.* v. *Braintree,* 146 Mass. 482, 486 (1888).
The company maintains that there is no allegation "which
even suggests that the Town is likely to assert its right of
purchase or has taken any steps in that direction beyond
the appointment of the committee and the bringing of this
litigation," and that "[i]t may well never do so." The com-
pany thus concludes that "[w]hat the Town is seeking is
a purely advisory opinion as to the probable cost of exer-
cising its rights under the charter, before it decides whether
or not to exercise those rights," and therefore that no ac-
tual controversy has arisen under G. L. c. 231A, § 1.

We recognize that there is some merit to the company's
contention. However, bearing in mind the purpose of G. L.
c. 231A as expressly stated in § 9 thereof, that "[t]his
chapter is declared to be remedial, [that i]ts purpose is to
remove, and to afford relief from, uncertainty and inse-
curity with respect to rights, duties, status and other legal
relations, and [that] it is to be liberally construed and
administered," we exercise our discretion to consider below
the substantive issue of the case reported by the Superior
Court judge. *Reilly* v. *School Comm. of Boston,* 362 Mass.
689, 695 (1972). *Billings* v. *Fowler,* 361 Mass. 230, 234
(1972), and cases cited. *Jacobson* v. *Parks & Recreation
Comm'n of Boston,* 345 Mass. 641, 645 (1963). *American
Mach. & Metals, Inc.* v. *DeBothezat Impeller Co.,* 166 F.2d
535, 536-537 (2d Cir. 1948), cert. denied, 339 U.S. 979
(1950). In so doing, we intend to set no precedent which
encourages parties to seek resolution of issues prematurely
or of controversies or conflicts which might possibly arise
in the future. Rather, "[w]e have exercised our discretion
very broadly in this case in favor of declaratory relief for
the reason that a decision of all these matters seems im-
portant to enable the parties to deal intelligently with the
situation before them, to agree between themselves as far
as possible, and to reduce as much as possible the area of

future litigation. In different circumstances we might think that some of the questions presented were not proper subjects for a declaratory decree." *Cohasset Water Co.* v. *Cohasset,* 321 Mass. 137, 149 (1947).

2. We turn to a consideration of the principal issue on which declaratory relief is sought, viz., the meaning of the term "actual cost" under St. 1880, c. 73, § 7. We note at the outset that we do not attempt to provide herein a detailed explication of such term or to assign to it a dollar amount in the circumstances of this case. Because of the limited record before us, we define "actual cost" under the statute only generally, without undertaking its arithmetical application or such specific analysis as in our view necessarily would require a more complete record than we now have.

This court apparently has not previously considered the meaning of the term "actual cost" as used in St. 1880, c. 73, § 7, or in similar charters granted to water companies during the same period. Moreover, such term "is not a technical one having at all times the same meaning. It is a general or descriptive term which may have varying meanings according to the circumstances in which it is used." *Boston Molasses Co.* v. *Molasses Distrib. Corp.,* 274 Mass. 589, 594 (1931). In the absence of prior authoritative judicial construction of the term as used in St. 1880, c. 73, § 7, the company thus contends that "actual cost" under the statute must include "every expenditure made by the Company related to the planning, acquisition, construction, erection, installation, preparation, creation and preservation of the present functioning system, down to the time of acquisition by the Town, although not the expense of operating the system or costs associated with property no longer owned by the Company.... [T]he statutory 'actual cost' of the Company's system is the full cost of the creation of the present system in its present condition." Moreover, the company maintains that there should be no reduction in the "actual cost" of its franchise and property "on account of depreciation, rates, or anything else." We cannot agree with the company's contention.

Rather, we are inclined to adopt generally the town's suggestion that we in effect define "actual cost" in substantially the same terms as are employed regularly by the Department of Public Utilities and approved by this court in determining the rate base of the company and of other regulated utilities in the Commonwealth for rate setting purposes. The rate base, or the amount of a company's investment on which it is entitled to earn a fair and reasonable return, *New England Tel. & Tel. Co.* v. *Department of Pub. Util.*, 360 Mass. 443, 450 (1971), is computed generally on the basis of original cost of plant, less accrued depreciation and less certain other deductions, and is derived from the company's book figures. See *Southbridge Water Supply Co.* v. *Department of Pub. Util.*, 368 Mass. 300 (1975); *New England Tel. & Tel. Co.* v. *Department of Pub. Util.*, 331 Mass. 604, 614-617 (1954). Such a definition, in contrast to that which the company urges us to adopt, would take into consideration the depreciation accrued on capital items over the years and recovered by the company through the rates which it has been permitted to charge its customers and would thus eliminate the possibility of a double recovery by the company for those items on which depreciation in fact has been taken. The amounts and figures necessary for a computation of "actual cost" under this definition may be obtained in large part from the books, accounts and returns of the company as compiled in accordance with the Uniform Classification of Accounts for Water Companies (1923). Moreover, "actual cost" as thus defined could be estimated by the town with a reasonable degree of accuracy as of the time of its vote to purchase, which is, in effect, the time of the purchase itself. *Rockport Water Co.* v. *Rockport*, 161 Mass. 279, 280 (1894).

In equating generally the term "actual cost" under St. 1880, c. 73, § 7, with the customary formula employed by the Department of Public Utilities in computing the rate base, we point out one exception to such formula which must be made in this case. The department, in the exercise of its ratemaking power, "has consistently followed the

practice of excluding the amount invested in plant under construction from the rate base." *New England Tel. & Tel. Co.* v. *Department of Pub. Util.*, 360 Mass. 443, 454-456 (1971). While this practice as it applies to the setting of rates merely defers the start of earnings on a company's investment in such plant until its construction is completed, *Boston Gas Co.* v. *Department of Pub. Util.*, 368 Mass. 92, 101-102 (1975), to exclude from "actual cost" the company's investment in plant under construction in the circumstances of this case would, in effect, deprive the company of such plant without compensation therefor. For this reason, we believe that "actual cost" under St. 1880, c. 73, § 7, should include an amount equal to the cost incurred by the company, to the time of purchase by the town, of the company's plant, if any, then under construction. We decline on the record before us to express any view whether other exceptions to the rate base formula should be made in determining "actual cost" in the present case.

We have considered the company's further contention that "the 'actual cost' formula for determining the price of the Company on compulsory sale should not be considered to be in effect any longer . . ." and the various grounds urged in support of such contention. The contention is without merit, and further discussion thereof would serve no useful purpose.

The case is remanded to the Superior Court for the entry of a judgment declaring the rights and liabilities of the parties in accordance with this opinion.

*So ordered.*