BERNARD P. LACOUTURE *vs.* RETIREMENT BOARD OF QUINCY.

Norfolk. March 9, 1981. — April 28, 1981.

Present: GRANT, CUTTER, & GREANEY, JJ.

*Retirement. Pension. Veteran. Practice, Civil,* Declaratory relief.

A veteran's part-time employment in 1938 as a school aide at a high school
    under a Federal program administered by the National Youth Admin-
    istration qualified as creditable service of the Commonwealth for pur-
    poses of the retirement provisions of G. L. c. 32, §§ 56-60. [739-744]

CIVIL ACTION commenced in the Superior Court Depart-
ment on November 9, 1979.

The case was heard by *Garrity,* J., on motions for sum-
mary judgment.

*Robert J. Muldoon, Jr. (Elizabeth A. Zeldin* with him)
for the plaintiff.

*Laurence W. Cowley,* Assistant City Solicitor, for the de-
fendant.

CUTTER, J. La Couture is a school teacher in Quincy and
it does not appear to be disputed by the retirement board
(the board) that he is an honorably discharged veteran who
served for three years in World War II. He was employed
when a high school student for ten hours a month in
1938-1939, as a "school aide" at thirty cents an hour at
Brockton High School under the so called Student Aid Pro-
gram. This was a Federal program under the National
Youth Administration (N.Y.A.), created by Executive
Order No. 7086 (June 26, 1935), later amplified by Execu-
tive Order No. 7164 (August 29, 1935), and funded by the
Emergency Relief Appropriation Act, 49 Stat. 115 (1935),
and subsequent appropriation acts. See, e.g., 52 Stat. 809,
811 (1938), the Work Relief and Public Works Appropria-
tion Act. LaCouture's N.Y.A. service took place from No-

vember 1, 1938, to June 23, 1939, and from October 16, 1939, to January 15, 1940. In the period of LaCouture's 1938-1939 service paid for by N.Y.A., that agency operated under Administrative Order No. 63 of July 9, 1938, issued by the Executive Director, Works Progress Administration, 3 Fed. Reg. 1913, 45 C.F.R. § 402.1 et seq., at 1318 (Supp. 1938).

LaCouture has now completed service of nearly thirty years creditable toward a veteran's pension. If eligible to retire with veteran's retirement benefits under G. L. c. 32, §§ 56-60, he plans to do so in June, 1981. LaCouture's wife has severe arthritis which requires him to move to a dry climate as soon as possible. To make such a change of residence, it is important to him that he know what his pension situation will be.

The principal provisions relating to the retirement of veterans and their pensions are found in G. L. c. 32, §§ 56-60. Section 60, as amended through St. 1973, c. 207, § 7, provides in part: "No veteran whose employment first begins after June" 30, 1939, "shall be subject to the provisions of sections" 56 to 59 "inclusive; nor shall any veteran whose employment first began on or before said June thirtieth be subject to said provisions unless at the time of his retirement the total period of his creditable service is at least equal to twice the time he was not in the employ of the commonwealth or of a county, city, [or] town . . . subsequent to the date when his employment by the commonwealth or by a county, city, [or] town . . . first began." LaCouture would like to effect present retirement on pension under the provisions of G. L. c. 32, § 58, as amended through St. 1973, c. 207, § 3, which reads in part: "A veteran who has been in the service of the commonwealth, or of any county, city, [or] town . . . for a total period of thirty years in the aggregate, shall, at his own request, with the approval of the retiring authority, be retired from active service at seventy-two percent of the highest annual rate of compensation, including any bonuses" or other special payments not relevant to the present discussion.

LaCouture in 1979 initiated discussions with the board concerning whether his N.Y.A. service prior to June 30, 1939, met the requirements of § 60, quoted above. He was informed by the board on May 4, 1979, that the board had voted "that work under Federal service" for N.Y.A. "in 1938 would not meet the requirements for retirement under" G. L. c. 32, §§ 56 to 60. This view was confirmed by an opinion of Brockton's city solicitor, dated June 1, 1979.

On November 9, 1979, LaCouture filed a complaint seeking declaratory relief concerning whether he could obtain retirement as a veteran under § 58. The complaint asserted many of the facts stated above. At the conclusion of the pleadings, cross motions for summary judgment were filed. Additional facts stated above appear in an affidavit filed by LaCouture in support of his motion for summary judgment. No facts stated above appear to be in dispute.

The motion judge allowed the board's motion. Summary judgment dismissing the complaint was entered, and LaCouture has appealed.

In his ruling on the motion, the motion judge gave as reasons for his decision, "While . . . [LaCouture] worked for and was supervised by Brockton School Department personnel, the checks he received were paid directly to him by the United States Government. In order to qualify as an employee of the Commonwealth, the definitions section of G. L. c. 32 require that the employee be paid by the Commonwealth and I rule that the payment here by the United States Government defeats the plaintiff's claim for the veteran's pension which he seeks to have awarded to him." The judge, by inadvertence, overlooked the circumstance that LaCouture worked in 1938-1939 for the city of Brockton and not for the Commonwealth, but that mistake does not affect the situation, as we view it.

1. There is no definition in G. L. c. 32, § 60, of "employment" as used in that section. The motion judge improperly relied on "the definitions section of G. L. c. 32" as requiring that an "employee" be paid by the Common-

wealth. That section, § 1, does not purport to provide definitions for more than "words and phrases as used in" §§ 1 to 28, inclusive, which deal with the State, teachers', county, city, town, and other contributory retirement systems. Thus the definition of "employee" in § 1 has no application to "veterans" entitled to retire under §§ 56-60. See *Bianchi* v. *Retirement Bd. of Somerville*, 359 Mass. 642, 647 (1971), where it was said, "Generally speaking, sections of c. 32 other than §§ 56-60 apply to the retirement of veterans only if they are expressly made applicable thereto by such other sections or by §§ 56-60. The principal exceptions to this general statement are found in §§ 90A through 102 which contain provisions of general application to some or all retirement systems or persons retired thereunder."

2. The *Bianchi* case, at 646, quoting *Weiner* v. *Boston*, 342 Mass. 67, 71 (1961), stated, "In order to be eligible for retirement under G. L. c. 32, § 58, as amended, a person must meet three requirements: (1) he must be a veteran within the meaning of the statute (c. 32, § 1)[1] . . .; (2) he must have been in the service of the Commonwealth, or subdivision thereof, for a total period of thirty years in the aggregate; and (3) he must be in active service at the time of retirement. Each of these three requirements is a condition precedent to eligibility for retirement. If any one of them is not met, the claim fails." LaCouture obviously satisfied the requirement that he be a veteran. He will soon satisfy the requirement that he have been in the service of the Commonwealth or a subdivision for thirty years, and (if then living) presumably will be in active service at the time of his retirement. A fourth requirement, already mentioned, is found in § 60, viz. that he have been in service before June 30, 1939. This requirement raises the principal issue now before us. The motion judge's ruling, if correct, would also impose another requirement, viz. that LaCouture's service prior to June 30, 1939, have been compensat-

[1] Sections 56-60 expressly incorporate by reference the definition of "veteran" in § 1. G. L. c. 32, § 56.

ed by the Commonwealth or a subdivision thereof. As will be seen later, we perceive no such further requirement in §§ 56-60.

The decided cases in this area must be examined. The *Bianchi* case, 359 Mass. at 648-649, establishes that some part-time employment, at least if regular, will count toward a veteran's retirement. In *Sullivan* v. *Boston Retirement Bd.,* 359 Mass. 228, 229-230 (1971), it was decided that uncompensated service by a veteran, as a member of a school committee, may not be included in computing the amount of service required by § 58. *Flanagan* v. *Lowell Housing Authy.,* 356 Mass. 18, 20-21 (1969), held, with respect to a veteran employed by a housing authority (part of whose administrative expenses were paid from rental income derived from Federal projects), that his full pension was to be paid without allocation between payments from State and Federal funds. It was established in *Hoban* v. *Boston Retirement Bd.,* 355 Mass. 681, 684-685 (1969), that the requirement in § 58 for a veteran's application for retirement to be "with the approval of the retiring authority" gives to the retirement board only a ministerial function to perform. The retirement board has no power to refuse approval of retirement under §§ 56 to 60 when all other statutory requirements for such retirement have been met. In *Santucci* v. *Selectmen of Palmer,* 4 Mass. App. Ct. 785 (1976), "casual" service of Santucci as a janitor for 255 hours in 1938 and 1939 while a student at Massachusetts State College in Amherst was held to be "employment" within § 60.[2]

---

[2] Examination of the original papers in the *Santucci* case shows that the trial judge in that case found (record appendix at 24) that payments to Santucci for his work at Massachusetts State College were "from state funds". The evidence in that case (transcript at 78-84, 133), however, strongly suggests that Santucci's employment was directly like that of LaCouture in the present case, and that Santucci was in fact paid from, or with the aid of, Federal funds allocated by N.Y.A. to the Massachusetts State College and paid out by it. We must accept, of course, the judge's finding in the *Santucci* case as representing the facts underlying his decision.

The Executive Orders (see Exec. Order Nos. 7086 and 7164) under which N.Y.A. came into existence give only general indication of what the N.Y.A. program was to be. By Executive Order No. 7086, N.Y.A.'s functions and duties were described as to "initiate and administer a program of approved projects which shall provide . . . work relief, and employment for persons between the ages of sixteen and twenty-five . . . no longer in regular attendance at a school requiring full time." Executive Order No. 7164 was somewhat more specific in defining student aid projects as "projects financed, in whole or in part, from [Federal] funds . . . which provide financial assistance to needy young people in amounts which will permit them to continue their education at high schools [and] colleges . . . in exchange for part-time work upon useful projects." It was also provided that student aid projects "be supervised by" N.Y.A.

We gain somewhat more assistance from the regulations governing N.Y.A.'s Student Aid Program, in force in 1938 and prior to June 30, 1939. See the 1938 supplement to 45 Code of Federal Regulations § 402.1. "Project" is defined there as meaning "projects . . . for the part-time employment of needy students . . . financed . . . from funds appropriated to the Works Progress Administration for" N.Y.A. "by the Emergency Relief Appropriation Act of 1938." 45 C.F.R. § 402.1(a) (Supp. 1938). The Student Aid Program refers "to the part-time employment of needy students . . . in regular attendance at schools [and] colleges . . . in order to allow them to continue their scholastic work." 45 C.F.R. § 402.1(b) (Supp. 1938). That portion of the Student Aid Program contemplated employing needy students in regular attendance at nonprofit making, tax-exempt, educational institutions not requiring high school graduation for entrance. See 45 C.F.R. § 402.1(b) & (c) (Supp. 1938). Hourly wage rates were to "be the same as those usually prevailing in the institution . . . for the same type of work," and "designated officials of the participating institutions" were to be responsible for determining that

monthly earnings and rates of pay complied with the regulations. Hours of work, in accordance with the regulations, "shall be determined by the institution" (45 C.F.R. §§ 402.2-402.4 [Supp. 1938]), which shall also determine whether a student qualifies on a need basis. "Officials of . . . participating institutions shall be responsible for assigning students to suitable work and for supervising [student] work . . . ." 45 C.F.R. § 402.5 (Supp. 1938). All of these provisions indicate that in 1938-1939 Brockton High School, a participating institution, was LaCouture's employer and that N.Y.A. was merely providing the funding without assuming toward him any employer-employee relationship.

The N.Y.A. records attached to LaCouture's affidavit are entitled "Transmittal of Verification of *Federal Service*" (emphasis supplied). It would seem, however, (a) that this is only because a standard General Services Administration form (GSA Form 7278 [4/79]) was used to transmit his records to LaCouture, and (b) that the heading on the form does not affect the substantive fact that LaCouture, prior to June 30, 1939, performed services for Brockton High School for compensation. That school had authority to direct in all significant details what he did and how he did it. We hold it to be immaterial (if, indeed, it be the case) that the checks which LaCouture received were paid to him directly by the United States.[3]

We regard the present case as indistinguishable in substance from the situation reviewed in the *Santucci* case, 4 Mass. App. Ct. at 785-786. We hold that LaCouture, on the facts of record, meets the requirement for retirement as a veteran found in G. L. c. 32, § 60, of having begun his employment by the city of Brockton prior to June 30, 1939.

3. This was an appropriate case for exercising discretion to afford declaratory relief under G. L. c. 231A, §§ 1-9. LaCouture should not be required irrevocably to seek and to obtain retirement before ascertaining by litigation what

_____

[3] The finding to this effect by the motion judge is not supported by any statement in any affidavit or other document in the record.

his pension will be. See *Billings* v. *Fowler,* 361 Mass. 230, 234 (1972); *Southbridge* v. *Southbridge Water Co.,* 371 Mass. 209, 214-215 (1976).

4. The judgment is reversed. A new judgment is to be entered containing a declaration of rights consistent with this opinion.

*So ordered.*