EDWARD E. BROWN vs. CITY OF TAUNTON & others[1]
(and a companion case[2]).

Bristol.　April 8, 1983. — September 15, 1983.

Present: GRANT, KAPLAN, & WARNER, JJ.

*Practice, Civil,* Declaratory relief.　*Retirement.　Public Officer.*

An action for declaratory relief under G. L. c. 231A was an appropriate
method to determine whether a public employee suspended under
c. 268A, § 25, who was contemplating retiring before the resolution of
the criminal charges against him, would be entitled to pension bene-
fits.　[615-618]

The suspension under G. L. c. 268A, § 25, of a municipal employee in-
dicted on criminal charges, and its consequent impact on his right to
claim pension benefits, terminated when the term of office from which
he was suspended expired.　[618-619]

A municipal employee suspended pursuant to G. L. c. 268A, § 25, follow-
ing his indictment for misconduct in office was not entitled to receive
sick leave benefits during the period from the date of his suspension to
the end of his term of office.　[619-621]

CIVIL ACTION commenced in the Superior Court Depart-
ment on December 4, 1979.

The case was heard by *Jacobs*, J., on a motion for sum-
mary judgment.

CIVIL ACTION commenced in the Superior Court Depart-
ment on November 2, 1981.

A motion to dismiss was heard by *Taveira*, J.

*Henry P. Sorett* for Edward E. Brown.

*David T. Gay*, Special Assistant City Solicitor, for the
city of Taunton & others.

---

[1] Officials of the city of Taunton.

[2] Edward E. Brown vs. Retirement Board of Taunton.

WARNER, J.  These are two cases which were consolidated on appeal.  In the first, the plaintiff sought an order compelling the defendant, the city of Taunton (city), to pay him sick leave benefits.  The parties stipulated to all of the material facts.  On the plaintiff's motion for summary judgment, judgment was entered for the defendants.  See Mass. R.Civ.P. 56(c), 365 Mass. 824 (1974).  In the second, filed almost two years later, the plaintiff sought declaratory relief (G. L. c. 231A) with respect to his rights to claim a pension.  On motion of the defendant, the retirement board (board) of the city, under Mass.R.Civ.P. 12(b)(1) & (6), 365 Mass. 755 (1974), a judgment was entered dismissing the action.[3]

1. *The declaratory judgment case.*  The complaint alleges the following facts.  The plaintiff is over fifty-five years of age and was employed by the city for over thirty years.  On January 1, 1977, he was appointed by the municipal council of the city (council) to a three-year term as head of the building department and building inspector.  On September 18, 1979, the plaintiff was indicted for conspiracy to divide, and for dividing, contracts in violation of G. L. c. 43, § 28.  On October 2, 1979, the council voted to suspend the plaintiff from his offices.  See G. L. c. 268A, § 25.[4]  The plaintiff's term in his offices expired on Decem-

---

[3] In his order on the motion to dismiss it appears that the judge drew one inconsequential fact from an affidavit of the plaintiff in support of his motion for summary judgment.  Ordinarily on a motion under rule 12(b)(6), if matters outside the pleading are presented to and not excluded by the court, the motion must be treated as a motion for summary judgment under rule 56.  See Mass.R.Civ.P. 12(b).  In the circumstances we review the judgment as one on a motion to dismiss under rule 12(b)(6).

[4] General Laws c. 268A, § 25, inserted by St. 1972, c. 257, provides in relevant part:

"An officer or employee of a county, city, town or district, howsoever formed, including, but not limited to, regional school districts and regional planning districts, or of any department, board, commission or agency thereof may, during any period such officer or employee is under indictment for misconduct in such office or employment or for misconduct in any elective or appointive public office, trust or employment at any time held by him, be suspended by the appointing authority, whether or not such appointment was subject to approval in any manner. . . .

ber 31, 1979, while he was under suspension, and he was not reappointed. On March 28, 1980, the plaintiff was found guilty of conspiracy to divide contracts and has appealed. The plaintiff wishes to retire and claim a superannuation pension (see G. L. c. 32, §§ 5 & 10) at the earliest possible date.

General Laws c. 268A, § 25, provides that "any person who retires from service *while under such suspension* [shall not] be entitled to any pension or retirement benefits, notwithstanding any contrary provisions of law, but all contributions paid by him into a retirement fund, if any, shall be returned to him" (emphasis supplied). The plaintiff contends that his suspension ended with the expiration of his term of office; the board contends that he remains under suspension at least until all criminal charges against him have been finally resolved.[5]

The threshold question is whether the complaint states an appropriate case for declaratory relief under G. L. c. 231A. See *Southbridge* v. *Southbridge Water Supply Co.,* 371 Mass. 209, 213-215 (1976); *Bello* v. *South Shore Hosp.,* 384 Mass. 770, 778 (1981). The Superior Court judge ruled that

---

"Any person so suspended shall not receive any compensation or salary during the period of suspension, nor shall the period of his suspension be counted in computing his sick leave or vacation benefits or seniority rights, nor shall any person who retires from service while under such suspension be entitled to any pension or retirement benefits, notwithstanding any contrary provisions of law, but all contributions paid by him into a retirement fund, if any, shall be returned to him. . . .

". . . .

"If the criminal proceedings against the person suspended are terminated without a finding or verdict of guilty on any of the charges on which he was indicted, his suspension shall be forthwith removed, and he shall receive all compensation or salary due him for the period of his suspension, and the time of his suspension shall count in determining sick leave, vacation, seniority and other rights, and shall be counted as creditable service for purposes of retirement."

[5] In an affidavit submitted in support of a motion for summary judgment, the plaintiff states that there are other indictments pending, charging him with unlawfully dividing contracts (G. L. c. 43, § 28), the trial of which has been stayed pending disposition on appeal of the conspiracy indictment on which he was convicted.

the plaintiff had not stated a claim upon which relief could be granted (see rule 12[b][6]) because no "actual controversy" (G. L. c. 231A, § 1) existed, reasoning that the plaintiff's complaint was premature since he had not applied to the board for pension benefits. In the circumstances of this case we disagree. We think this aspect of the case is governed by our decision in *LaCouture* v. *Retirement Bd. of Quincy*, 11 Mass. App. Ct. 738 (1981). In that case the plaintiff sought a declaration whether certain employment under a Federal program qualified as creditable service in computing his Massachusetts pension. In holding that it was appropriate to exercise discretion to afford declaratory relief we stated: "[The plaintiff] should not be required irrevocably to seek and to obtain retirement before ascertaining by litigation what his pension will be." *Id.* at 744-745. Here the question presented is whether, if the plaintiff retires before the resolution of criminal charges against him, he would be eligible to seek a pension. The board maintains that the plaintiff is under suspension and, therefore, that if he retires before the resolution of the criminal charges, he would not be entitled to a pension but only to a return of his contributions to the retirement fund. See G. L. c. 268A, § 25. If the board's position is determined to be correct, the plaintiff will not retire while under suspension. We think the plaintiff "should not be required irrevocably to seek and to obtain retirement before ascertaining by litigation [whether he is eligible to seek a pension]." *La Couture* v. *Retirement Bd. of Quincy, supra* at 744-745. See *Southbridge* v. *Southbridge Water Supply Co., supra* at 213-215. Since there is no dispute concerning material facts but only a controversy concerning the interpretation of a statute, we decide the case on the merits. See *South Shore Natl. Bank* v. *Board of Bank Incorporation*, 351 Mass. 363, 368 (1966); *Carpenter* v. *Suffolk Franklin Sav. Bank*, 362 Mass. 770, 772 (1973).

We turn to the provisions of G. L. c. 268A, § 25. In analyzing § 25, "we are mindful that 'where the language of a statute is plain there is no room for speculation as to its

meaning or its implication. The Legislature must be presumed to have meant what the words plainly say, and it also must be presumed that the Legislature knew pre-existing law and the decisions of [the Supreme Judicial] Court.' *Condon* v. *Haitsma,* 325 Mass. 371, 373 (1950). Moreover, 'It is the function of the court to construe a statute as written and an event or contingency for which no provision is made does not justify judicial legislation.' *Prudential Ins. Co. of America* v. *Boston,* 369 Mass. 542, 547 (1976)." *First Natl. Bank* v. *Judge Baker Guidance Center,* 13 Mass. App. Ct. 144, 151 (1982).

General Laws c. 268A, § 25, enacted in 1972 (see note 4, *supra*), which applies to county, municipal and district officers and employees, in its operative language is identical to G. L. c. 30, § 59, as amended through St. 1964, c. 528, which pertains to State and public authority officers and employees. "The obvious public purpose of § 59 . . . was 'to protect the public interest,' in the light of the 'indisputable fact of the indictment,' from the inappropriate situation of having an official under indictment engaged in the duties of his office." *Reynolds* v. *Commissioner of Commerce & Dev.,* 350 Mass. 193, 194, cert. denied, 384 U.S. 1001 (1966), quoting from *Bessette* v. *Commissioner of Pub. Works,* 348 Mass. 605, 608-609 (1965). In *Caples* v. *Secretary of the Commonwealth,* 350 Mass. 638 (1966), the court held that the term of a temporary appointee to the position of an officer suspended under § 59 ended on the resignation of the officer because the resignation terminated the suspension. The court said: "We reject the construction urged by the plaintiff that the only effective basis for ending the temporary status of the officer [who may serve only during the period of suspension] must be by the termination of the proceedings against the suspended officer without a verdict or finding of guilty." 350 Mass. at 641. When G. L. c. 268A, § 25, was enacted in 1972, we presume the Legislature knew of the decisions of the Supreme Judicial Court construing the provisions of § 59. *First Natl. Bank* v. *Judge Baker Guidance Center, supra* at 151. We

think the plain language of § 25 means that a suspension is effective only as long as the person affected holds the office from which he was suspended. Such a construction is entirely consistent with the "obvious public purpose" of the statute. *Reynolds* v. *Commissioner of Commerce & Dev., supra* at 194. We hold, therefore, that when the plaintiff's term of office expired on December 31, 1979, his suspension under § 25 was terminated.[6] If this case presents a contingency which was not foreseen, that is a matter for Legislative concern.

2. *The sick pay case.* We state the relevant facts from the parties' stipulation in so far as they have not already been set forth in part 1 hereof. Shortly after being admitted to a hospital on September 30, 1979, the plaintiff suffered a serious heart attack; and as a result he was unable to work from September 30, 1979, through February 16, 1980. The plaintiff's suspension became effective, pursuant to G. L. c. 268A, § 25, on October 10, 1979. As of that date the plaintiff had accumulated 213 days of sick leave under a city ordinance governing the subject. The city refused to pay sick leave benefits to the plaintiff after the date of his suspension.

General Laws c. 268A, § 25, provides that "[a]ny person so suspended shall not receive *any compensation or salary* during the period of suspension" (emphasis supplied). Section 14-10 of the Revised Ordinances of the City of Taun-

---

[6] The issue has not been raised, and we express no view on the plaintiff's entitlement to a pension in the event that his present conviction is upheld or there are other convictions on the pending indictments. See G. L. c. 32, § 15(3) & (3A). Section 15(3A) was added by St. 1982, c. 630, § 20.

The plaintiff's eligibility for a pension in other respects is, of course, for determination by the board. We note, however, that the opinions of the Attorney General (Rep. A.G., Pub. Doc. No. 12, at 55 & 59 [1966]) relied upon by the board in its argument that any retirement application of the plaintiff would relate back to the period of his employment, and, therefore, to a time when he was under suspension, appear to be unsound in view of the express provisions of G. L. c. 32, § 10(1) & (3). We note further that the "moral turpitude" provisions of G. L. c. 32, § 10(1), do not apply since the plaintiff was not "removed or discharged from his office."

ton, as amended in 1977, provides, "An employee . . . whose service is terminated by any reason shall not be entitled to compensation in lieu of sick leave not used, except that an employee whose service is terminated by reason of . . . retirement . . . shall be paid for accumulated sick leave at his regular rate of pay being received at the time of his . . . retirement, said accumulated sick leave not to exceed eighteen hundred dollars ($1,800.00)." By the express terms of the city ordinance, the plaintiff is not entitled to sick pay for leave not used prior to the expiration of his term, and the plaintiff agrees that is so. Although not entirely clear from the language of the ordinance, the plaintiff may, on retirement, be entitled to a lump sum payment in lieu of accumulated sick leave. The question remains as to the plaintiff's right to sick leave pay from the date of his suspension to the end of his term of office on December 31, 1979.

The purpose of § 25 is apparent. A person suspended is relieved of all duties and loses for the time all benefits. There is thus a complete severance of the relationship between public employer and employee. See *Bessette* v. *Commissioner of Pub. Works, supra* at 608-609; *Reynolds* v. *Commissioner of Commerce & Dev., supra* at 194. It is in this context that we construe the words "any compensation or salary." We are also aided by the Revised Ordinances of the city which speak, in § 14-5, as amended in 1972, of an employee's entitlement to "sick leave with full pay" and, in § 14-10, of "compensation in lieu of sick leave not used." We conclude that the unqualified use in § 25 of the words "any compensation or salary," when considered in light of the purpose of the statute and the nature of the payments in question, demonstrates a legislative intent to include sick leave pay within their meaning. See *Rein* v. *Marshfield, ante* 519, 522 (1983). Compare *Boston Assn. of Sch. Admrs. & Supervisors* v. *Boston Retirement Bd.*, 383 Mass. 336, 339-343 (1981); G. L. c. 32, § 1.

Assuming, without deciding, that the plaintiff's entitlement to sick leave benefits accumulated prior to his suspen-

sion had vested, there is nothing in his argument that they may not be withheld during the period of suspension which has not been answered by decisions of the Supreme Judicial Court. See *Bessette* v. *Commissioner of Pub. Works, supra; Reynolds* v. *Commissioner of Commerce & Dev., supra.*

The judgment in Brown *vs.* Retirement Board of Taunton is reversed, and the case is remanded to the Superior Court for the entry of a judgment declaring that the plaintiff's suspension from office pursuant to G. L. c. 268A, § 25, terminated on the expiration of his term of office on December 31, 1979. The judgment in Brown *vs.* City of Taunton is affirmed.

*So ordered.*