MARIA SERRAZINA *VS.* SPRINGFIELD PUBLIC SCHOOLS.

No. 10-P-1429.

Hampden. April 7, 2011. - October 12, 2011.

Present: WOLOHOJIAN, MILKEY, & HANLON, JJ.

Further appellate review granted, 461 Mass. 1105 (2012).

*School and School Committee,* Arbitration, Suspension from employment, Termination of employment, Compensation of personnel, Professional teacher status. *Arbitration,* School committee, Confirmation of award. *Damages,* Back pay. *Labor,* Arbitration.

A teacher (plaintiff) suspended from employment under G. L. c. 268A, § 25, which provides for suspension of employees who are under indictment, did not waive her claim for back pay during the period of her suspension by choosing not to raise the issue in arbitration arising from her subsequent termination [621-623]; however, the plaintiff was not entitled to back pay for the period between her termination from employment and her subsequent reinstatement following the dismissal of the indictments against her, where she declined to ask the arbitrator for posttermination back pay, despite the availability of such relief under the termination statute, G. L. c. 71, § 42 [623].

There was no merit to the argument that a teacher (plaintiff) suspended from employment under G. L. c. 268A, § 25, which provides for suspension of employees who are under indictment, was not substantively entitled to back pay under that statute following the dismissals of the charges against the plaintiff pursuant to an agreement with the Federal government, where such a dismissal was not itself a finding or verdict of guilty or equivalent to a finding or verdict of guilty, as required by the statute. [623-625]

CIVIL ACTION commenced in the Superior Court Department on October 24, 2008.

The case was heard by *Peter A. Velis,* J.

*Timothy J. Ryan* for the plaintiff.

*Maurice M. Cahillane* for the defendant.

WOLOHOJIAN, J. The plaintiff, a teacher in the Springfield public school system (school),[1] was suspended without pay and

---

[1] The plaintiff was employed by the defendant as a school adjustment counselor and held "professional teacher status" pursuant to G. L. c. 71, § 41.

subsequently terminated because she was the subject (together with her parents and siblings) of Federal indictments charging corruption at the Springfield Housing Authority (SHA).[2] After the charges against the plaintiff were dismissed pursuant to an agreement with the Federal government, the plaintiff sought reinstatement and back pay. The defendant denied those requests and terminated the plaintiff's employment. The plaintiff filed a grievance challenging her termination, and an arbitrator subsequently issued an award ordering the plaintiff's reinstatement.

The plaintiff then filed a complaint in the Superior Court, seeking confirmation of the award and back pay for the period from her suspension to her reinstatement. On cross motions for summary judgment, a Superior Court judge affirmed the award,[3] but ruled that the plaintiff was not entitled to back pay. The plaintiff appeals from that judgment, challenging the denial of her request for back pay. We affirm with respect to the period between the plaintiff's termination and her reinstatement, but reverse with respect to the period of her suspension.

*Background.* Broadly summarized, Federal indictments charged members of the plaintiff's family with exploiting the SHA for personal gain through a long-running scheme of bribery, embezzlement, and fraud. The plaintiff herself was charged, among other things, with conspiring to receive gratuities and receipt of gratuities, 18 U.S.C. §§ 201, 371 (2006), and conspiracy to commit theft against the United States, 18 U.S.C. §§ 371, 641 (2006). The plaintiff does not dispute that she received a number of items for which she did not pay, including paint, wallpaper, an alarm system, a refrigerator, and the construction services of SHA employees who performed repairs on her home. She also does not dispute that Federal agents found a suitcase containing $237,000 in cash in the attic of her home.

Citing the indictment, and acting pursuant to G. L. c. 268A, § 25 (suspension statute), the school's superintendent suspended the plaintiff from her job as a school adjustment counselor.[4] The

---

[2]The plaintiff's father, Raymond Asselin, Sr., served as executive director of the SHA from 1969 until his resignation in 2003.

[3]The defendant did not oppose confirmation of the arbitration award. That ruling is not before us on appeal.

[4]The school did not invoke the statute generally applicable to employee

suspension statute, G. L. c. 268A, § 25, inserted by St. 1972, c. 257, provides, in pertinent part:

> "An . . . employee of a . . . regional school district[] . . . may, during any period such . . . employee is under indictment for misconduct in such office or employment or for misconduct in any elective or appointive public office, trust or employment at any time held by him, be suspended by the appointing authority . . . .

> "Any person so suspended shall not receive any compensation or salary during the period of suspension, nor shall the period of his suspension be counted in computing his sick leave or vacation benefits or seniority rights . . . .

> "If the criminal proceedings against the person suspended are terminated without a finding or verdict of guilty on any of the charges on which he was indicted, his suspension shall be forthwith removed, and he shall receive all compensation or salary due him for the period of his suspension, and the time of his suspension shall count in determining sick leave, vacation, seniority and other rights, and shall be counted as creditable service for purposes of retirement."

Approximately two years after her suspension, the plaintiff entered into a pretrial diversion agreement with Federal prosecutors. Under the terms of the agreement, the plaintiff "acknowledge[d] responsibility for her conduct" and "accepted and [took] responsibility for accepting" a number of goods and services from her father for which she did not pay. The plaintiff agreed that she "now underst[ood]" that those goods and services were improperly provided by and through the SHA. The plaintiff further agreed to pay $20,000 in restitution to resolve "any potential claims" involving SHA resources, and to "waive any claim she might have" to the cash seized from her home and certain real property on Cape Cod. For their part, the Federal prosecutors agreed to seek a dismissal of the plaintiff's indictment at the end of an eighteen-month diversion period.

---

suspensions, G. L. c. 71, § 42D, presumably because that statute limits the period of involuntary suspension to one month. We observe that G. L. c. 71, § 42D, unlike G. L. c. 268A, § 25, incorporates the review procedures set forth in G. L. c. 71, § 42.

As the end of the diversion period approached, the plaintiff informed the defendant that her indictment would soon be dismissed and that she wished to return to work. In response, the defendant terminated her employment effective October 22, 2007, pursuant to G. L. c. 71, § 42 (termination statute), citing "conduct unbecoming a teacher."[5] Approximately six months later, the Federal charges against the plaintiff were dismissed with prejudice in accordance with the terms of the diversion agreement.

The plaintiff, pursuant to the termination statute, challenged her termination through arbitration. Although that statute permits an arbitrator to award back pay, the plaintiff did not request it, stating that she would seek that particular remedy "elsewhere." Accordingly, although the arbitrator ordered the plaintiff's reinstatement,[6] he ruled:

"Ms. Serrazina in this arbitration makes no claim for back

---

[5]The termination statute, G. L. c. 71, § 42, as appearing in St. 1993, c. 71, § 44, provides, in pertinent part:

"[S]ubject to the provisions of this section, the superintendent may dismiss any employee of the school district. . . .

"A teacher with professional teacher status . . . shall not be dismissed except for inefficiency, incompetency, incapacity, conduct unbecoming a teacher, insubordination or failure on the part of the teacher to satisfy teacher performance standards developed pursuant to section thirty-eight of this chapter or other just cause.

"A teacher with professional teacher status may seek review of a dismissal decision within thirty days after receiving notice of his dismissal by filing a petition for arbitration with the commissioner. . . .

"Upon a finding that the dismissal was improper under the standards set forth in this section, the arbitrator may award back pay, benefits, reinstatement, and any other appropriate non-financial relief or any combination thereof. Under no circumstances shall the arbitrator award punitive, consequential, or nominal damages, or compensatory damages other than back pay, benefits or reinstatement. In the event the teacher is reinstated, the period between the dismissal and reinstatement shall be considered to be time served for purposes of employment. . . . With the exception of other remedies provided by statute, the remedies provided hereunder shall be the exclusive remedies available to teachers for wrongful termination."

[6]The arbitrator concluded that the plaintiff, in entering the pretrial diversion agreement, had not admitted to facts establishing conduct unbecoming a

pay, having indicated that she will pursue that remedy elsewhere. Therefore none is ordered, so long as reinstatement in accordance with this award occurs prior to the 2008-09 school year."

After the arbitrator issued his decision, the plaintiff filed the underlying action seeking confirmation of the arbitration award, and back pay[7] pursuant to the suspension statute. A Superior Court judge allowed the school's motion for summary judgment, reasoning that the plaintiff waived her claim for compensation before the arbitrator and could not now seek "duplicate" remedies under the suspension statute. As an alternate ground for his decision, the judge reasoned that the plaintiff was barred from collecting under the suspension statute because her pretrial diversion agreement amounted to a "finding or verdict of guilt[]" within the meaning of that statute.

*Discussion.* We deal here with the operation of two distinct statutes: the suspension statute, G. L. c. 268A, § 25, and the termination statute, G. L. c. 71, § 42.

The suspension statute permits the suspension of county and municipal employees while they are under indictment for misconduct in office.[8] However, in the event that "the criminal proceedings against the person suspended are terminated without a finding or verdict of guilty on any of the charges on which he was indicted, his suspension *shall* be forthwith removed, and he *shall* receive all compensation or salary due him for the period of his suspension . . . ." G. L. c. 268A, § 25, fifth par.

---

teacher. According to the arbitrator, the school improperly sought to "base a termination decision upon a claim that [the plaintiff] failed to proclaim her innocence with sufficient clarity and with sufficient precision and forcefulness as to meet the superintendent's liking."

[7]Although the plaintiff's complaint states that she also is seeking other lost benefits, the plaintiff has now confined herself to a claim for back pay. (In her brief, she states: "Make no mistake, this case is a dispute only about the back pay suspension benefits.")

[8]In cases involving teachers, the suspension statute has been interpreted to reach a significant range of off-duty misconduct. See *Dupree* v. *School Comm. of Boston*, 15 Mass. App. Ct. 535, 537-539 (1983); *Perryman* v. *School Comm. of Boston*, 17 Mass. App. Ct. 346, 349-351 (1983). "Except for cases involving teachers and police officers, [the statutory requirement of "misconduct in . . . office"] has been interpreted generally to *exclude* an employee's off-duty conduct." *Brittle* v. *Boston*, 439 Mass. 580, 594 (2003) (emphasis in original).

(emphasis supplied). The "period of suspension" may be longer than the period the employee is under indictment. See *Brittle* v. *Boston*, 439 Mass. 580, 584 & n.10 (2003) (removal of suspension is not automatic upon termination of criminal proceedings; suspension remains in effect until employee is notified that suspension is removed).

The termination statute governs the termination of tenured teachers. The statute "outlines an extensive and exclusive arbitration procedure for . . . performance-based dismissals." *School Comm. of Westport* v. *Coelho*, 44 Mass. App. Ct. 614, 618 (1998). If a tenured teacher is improperly terminated, the statute permits — but does not require — the arbitrator to award "back pay, benefits, reinstatement, and any other appropriate nonfinancial relief or any combination thereof." G. L. c. 71, § 42, sixth par. The arbitrator is not permitted to "award punitive, consequential, or nominal damages, or compensatory damages other than back pay, benefits or reinstatement." *Ibid.* With the exception of any "other remedies provided by statute," the termination statute's remedies are "the exclusive remedies available to teachers for wrongful termination." *Ibid.*

In summary, the suspension statute applies to certain public employees who are suspended because they are under indictment. By contrast, the termination statute applies to teachers who are terminated for the performance reasons enumerated in that statute. The two statutory schemes do not overlap. One can be suspended or one can be terminated, but one cannot be understood to be both suspended and terminated at the same time.[9],[10] "[T]he plain language of [the suspension statute] means that a suspension is effective only as long as the person affected holds the office from which he was suspended." *Brown* v. *Taunton*, 16

---

[9]We reject, for this reason, the plaintiff's illogical argument that her suspension continued even after she was terminated and that, as a result, she is entitled to back pay under the suspension statute for the time period from the date of her termination until the date she returned to work. The plaintiff's suspension ended on October 22, 2007, the date of her termination.

[10]We reject the defendant's equally illogical argument that the plaintiff could only seek remedies under the suspension statute while she was currently suspended. The suspension statute presumes that a remedy-seeking employee will have already had her suspension removed and the charges against her dropped. Indeed, until the suspension is removed, compensation "for the period of . . . suspension" cannot be fully measured.

Mass. App. Ct. 614, 619 (1983). Cf. *Caples* v. *Secretary of the Commonwealth*, 350 Mass. 638, 640-641 (1966) (resignation terminates suspension); *Massachusetts Bay Transp. Authy.* v. *Massachusetts Bay Transp. Authy. Retirement Bd.*, 397 Mass. 734, 738 n.7 (1986) (discharge from employment terminates suspension). We see nothing in either statute that would have required the plaintiff to seek, via arbitration, back pay for the period of her suspension. Arbitration is not required under the suspension statute, and appeals from suspensions made under that statute are ordinarily brought in the Superior Court. See *Brittle* v. *Boston*, 439 Mass. 580, 583 (2003); *Brown, supra* at 616-617. Although the termination statute requires arbitration, it does so only in cases of wrongful termination. The statute does not once mention the word "suspension" or any variant of it, and we are loath to extend its reach beyond what the Legislature has expressed. See *Carmel Credit Union* v. *Bondeson*, 55 Mass. App. Ct. 557, 560 (2002) (we interpret a statute according to its plain words and will "not add words to a statute that the Legislature did not put there").

Consequently, we conclude that the plaintiff did not waive her claim for back pay during the period of her suspension by choosing not to raise it in the arbitration brought pursuant to the termination statute. We reach a different conclusion, however, with respect to her claim for posttermination back pay. The termination statute contains an express Legislative directive that teachers' claims of wrongful termination be arbitrated and that the remedies for such termination be determined by the arbitrator:

> "With the exception of other remedies provided by statute, the remedies provided hereunder shall be the exclusive remedies available to teachers for wrongful termination."

G. L. c. 71, § 42, sixth par. Because the plaintiff declined to ask the arbitrator for posttermination back pay, despite the availability of such relief under the termination statute (under which she invoked arbitration), her claim for posttermination back pay has been waived.

The remaining question is whether the plaintiff is substantively entitled to back pay under the suspension statute. The statute provides that a suspended employee "shall receive all compensation

or salary due him for the period of his suspension," *if* the criminal proceedings against the employee are "terminated without a finding or verdict of guilty." The defendant argues that the disposition of the plaintiff's criminal case was "in substance a guilty plea" and constituted "a finding or verdict of guilty." We do not agree.

The Federal pretrial diversion agreement was not itself a "finding or verdict of guilty," nor was it equivalent to a "finding or verdict of guilty."[11] The plaintiff did not admit to the facts alleged in the indictment, nor did she admit to knowing at the time she accepted the goods and services that they came from the SHA. The plaintiff admitted only to accepting goods and services from her father, which she later learned came from the SHA. That the plaintiff agreed to pay restitution and waive claims to certain property certainly implies culpability on her part (or, at the very least, unjust enrichment), but the statute requires more: "a finding or verdict of guilty."[12]

The defendant in essence asks us to depart from the plain text of the suspension statute. The statute stresses that its purpose is to compensate the suspended employee when "no misconduct by him is established," *Brittle*, 439 Mass. at 586, and "upon his vindication," *Bessette* v. *Commissioner of Pub. Works*, 348 Mass. 605, 608 (1965). We are not unsympathetic to the defendant's argument, but we are bound by the plain language of the statute. See *Pielech* v. *Massasoit Greyhound, Inc.*, 423 Mass. 534, 539 (1996), quoting from *Rosenbloom* v. *Kokofsky*, 373

---

[11]Indeed, United States Department of Justice policies indicate that Federally indicted defendants enter into such agreements precisely to avoid findings of guilt. See U.S. Dept. of Justice, United States Attorneys' Manual, Title 9, Criminal Resource Manual § 712(F) (1997) ("The diversion period begins upon execution of a Pretrial Diversion Agreement. The Agreement . . . outlines the terms and conditions of supervision and is signed by the offender, his/her attorney, the prosecutor, and either the Chief Pretrial Services Officer or the Chief Probation Officer. The offender must acknowledge responsibility for his or her behavior, but is not asked to admit guilt. The period of supervision is not to exceed 18 months, but may be reduced").

[12]The decision in *Brittle* is not to the contrary. The court in that case held that the term "criminal proceedings" as appearing in the last paragraph of G. L. c. 268A, § 25, includes indictments overlapping in time with and directly related to the original indictment. *Brittle, supra* at 585-586. Contrary to the defendant's argument, *Brittle* does not implicate the meaning of the term "finding or verdict of guilty" as appearing in the same paragraph.

Mass. 778, 781 (1977) ("We cannot interpret a statute so as to avoid injustice or hardship if its language is clear and unambiguous and requires a different construction"). We recognize that the result here is that the plaintiff will receive back pay from the public fisc for the period when she was rightfully suspended because she was the subject of Federal indictment. This, though, is the consequence of explicit and plain language used by the Legislature — from which we cannot deviate, and which we are bound to apply.

*Conclusion.* The plaintiff is entitled to back pay, under G. L. c. 268A, § 25, for the period of her suspension beginning on August 10, 2004, and ending on October 22, 2007. The plaintiff is not entitled to back pay or lost benefits for any other period. The judgment of the Superior Court is reversed insofar as it denies the plaintiff compensation for the period of her suspension, the judgment is otherwise affirmed. The case is remanded for calculation of back pay.

*So ordered.*