CITY OF SPRINGFIELD vs. DIRECTOR OF THE DIVISION OF
EMPLOYMENT SECURITY & another[1]
(and six companion cases[2]).

Hampden.  October 9, 1986. — December 10, 1986.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Public Employment,* Suspension, Misconduct, Forfeiture of unemployment
benefits. *Statute,* Construction. *Employment Security,* Eligibility for
benefits, Public employment. *Words,* "Compensation."

General Laws c. 268A, § 25, providing for the temporary removal from
office of county, municipal, and district officers who have been indicted
for misconduct in office, and denying them "any *compensation* or salary
during the period of [their] suspension" (emphasis supplied), precluded
the allowance of employment security benefits under G. L. c. 151A to
several police officers of the city of Springfield during the periods of
their indefinite suspension without pay pursuant to c. 268A, § 25, arising
out of their indictments by a grand jury for alleged violations of the
controlled substances law. [788-792]

CIVIL ACTIONS commenced in the Springfield Division of
the District Court Department, one on November 23, 1984;
four on November 26, 1984; and two on December 13, 1984.

The cases were heard by *Alphonse C. Turcotte,* J.

*Wendy Thaxter,* Assistant Attorney General, for the Director
of the Division of Employment Security.

*Richard T. Egan,* City Solicitor, for the plaintiff.

LIACOS, J. This appeal presents the question whether several
police officers of the city of Springfield were entitled to receive

---

[1] Stanley Jablonski.

[2] The six companion cases are identical cases brought by the city of
Springfield against the Director. Each case names a different individual
defendant. Those defendants are Albert Garrity, Nicholas Verteramo, Alan
Rattelle, Stephen Turgeon, Pedro Ortiz, and Daniel Montigny.

employment security benefits under G. L. c. 151A (1984 ed.), during their periods of indefinite suspension without pay pursuant to G. L. c. 268A, § 25 (1984 ed.).[3] The facts are not disputed. From May to early July, 1984, a Hampden County grand jury returned secret indictments against fourteen Springfield police officers, alleging violations of the controlled substances law. Each officer was promptly suspended by the Springfield board of police commissioners pursuant to G. L. c. 268A, § 25 (the conflict of interest law). By the end of July, seven of the indicted officers[4] had claimed employment security benefits. The Division of Employment Security (division) approved all seven claims. The city of Springfield (city) duly requested hearings as to each claim allowed.[5] The grants of

---

[3] General Laws c. 268A, § 25 (1984 ed.), provides in pertinent part:

"An officer or employee of a county, city, town or district . . . or of any department . . . or agency thereof may, during any period such officer or employee is under indictment for misconduct in such office or employment or for misconduct in any elective or appointive public office, trust or employment at any time held by him, be suspended by the appointing authority . . . .

"Any person so suspended shall not receive any compensation or salary during the period of suspension, nor shall the period of his suspension be counted in computing his sick leave or vacation benefits or seniority rights, nor shall any person who retires from service while under such suspension be entitled to any pension or retirement benefits, notwithstanding any contrary provisions of law, but all contributions paid by him into a retirement fund, if any, shall be returned to him.

". . . .

"If the criminal proceedings against the persons suspended are terminated without a finding or verdict of guilty on any of the charges on which he was indicted, his suspension shall be forthwith removed, and he shall receive all compensation or salary due him for the period of his suspension, and the time of his suspension shall count in determining sick leave, vacation, seniority and other rights, and shall be counted as creditable service for purposes of retirement."

[4] The seven officers are the seven coappellants here with the Division of Employment Security. See notes 1 and 2, *supra.*

[5] Because the city remits such benefits on a payment per claim basis, as permitted by G. L. c. 151A, § 14A, the division began billing the city in September, 1984, for benefits paid out by the division to the suspended officers (claimants). By the end of 1984, six of the seven claimants had been

benefits were upheld after hearings before the division's review examiners and after appeals to its board of review. The city then appealed to the District Court pursuant to G. L. c. 151A, § 42 (1984 ed.). The District Court consolidated the seven appeals.

On November 14, 1985, the District Court ruled in favor of the city and set aside the division's allowance of benefits on the ground that "the substantial rights of [the city] have been prejudiced because the [division's] decision is . . . [b]ased upon an error of law." G. L. c. 30A, § 14 (7) (c) (1984 ed). Pursuant to G. L. c. 151A, § 42, the division claimed its then-existing right to appeal directly to this court.[6] We affirm.

The issue raised by the city is whether, even if the claimants are not disqualified from receiving employment security benefits by the terms of the employment security law, G. L. c. 151A,[7] any receipt of such payments by the claimants is nonetheless barred by the conflict of interest law. The city argues that the specific provisions of G. L. c. 268A, § 25, prevail over the general provisions of c. 151A.

We have not had occasion to interpret § 25 of c. 268A in this context. However, we have observed that this statute, "which applies to county, municipal, and district officers, is identical in its ·operative language to G. L. c. 30, § 59 [the so-called 'Perry Law'], which applies to officers and employees of the Commonwealth." *Massachusetts Bay Transp. Auth.* v. *Massachusetts Bay Transp. Auth. Retirement Bd.,* 397 Mass. 734, 739 n.8 (1986). Like the Perry Law, then, the purpose of c. 268A, § 25, is "to remedy the untenable situation which

convicted, and each had resigned. The seventh, Pedro Ortiz, was acquitted and reinstated with back pay and full benefits, as required by c. 268A, § 25.

[6] Appeals from District Court decisions regarding employment security benefits, if handed down after January 1, 1986, can be directed as of right only to the Appeals Court, not to this court. G. L. c. 151A, § 42, as amended through St. 1985, c. 314, § 3 (effective January 1, 1986).

[7] As to whether the claimants would be entitled to benefits under G. L. c. 151A, § 25, if not barred by § 25 of c. 268A, the parties do not agree. In the view we take of this matter, we need not resolve this question. The division so decided, and, for the purpose of this opinion, we assume, without deciding, that, absent the provisions of c. 268A, § 25, the claimants would be eligible for benefits.

arises when a person who has been indicted for misconduct in office continues to perform his public duties while awaiting trial. . . . The statute addresses this problem by allowing for the temporary removal of such employees from office, and by precluding the payment of compensation and the awarding of retirement benefits during the period of their suspension." (Citations omitted.) *Id.* at 739. We have also held that, because "[s]ection 59 of c. 30 contains no exception[, . . . t]he purpose of the act, as shown by its terms, calls for its general application. . . . Chapter 30, § 59, is dominant in its purpose and its terms." *Bessette* v. *Commissioner of Pub. Works,* 348 Mass. 605, 608 (1965).

The division argues that the objectives of c. 268A and c. 151A can be reconciled, and that the claimants are entitled to unemployment benefits during the period of indefinite suspension. The division maintains that the compensatory objectives of c. 151A would be entirely frustrated by a denial of benefits to the claimants, and that the objectives of c. 268A are substantially satisfied when an indicted official is suspended from public service during the pendency of criminal actions against him. We are mindful, of course, that "[s]tatutes which do not necessarily conflict should be construed to have consistent directives so that both may be given effect." *County Comm'rs of Middlesex County* v. *Superior Court,* 371 Mass. 456, 460 (1976). However, when striving to construe these statutes as harmonious, we cannot ignore the discordant note struck by the directive of c. 268A, § 25, that suspended public officials "shall not receive any *compensation* or salary during the period of suspension" (emphasis supplied). Because "[n]one of the words of a statute is to be regarded as superfluous," *Commonwealth* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Auth.,* 352 Mass. 617, 618 (1967), quoting *Bolster* v. *Commissioner of Corps. & Taxation,* 319 Mass. 81, 84-85 (1946), we must conclude that the statutes are in conflict unless we are persuaded that the grant of unemployment benefits to the claimants does not amount to "compensation" within the meaning of c. 268A, § 25.

It is "a salient principle of statutory construction . . . that the statutory language itself is the principal source of insight into the legislative purpose. . . . Also, where the language of the statute is plain and unambiguous, as here, legislative history is not ordinarily a proper source of construction." (Citation omitted.) *Hoffman* v. *Howmedica, Inc.*, 373 Mass. 32, 37 (1977). Moreover, "[w]here the language of a statute is plain, it must be interpreted in accordance with the usual and natural meaning of the words." *Gurley* v. *Commonwealth*, 363 Mass. 595, 598 (1973). *Commonwealth* v. *Thomas*, 359 Mass. 386, 387 (1971).

When the Legislature drafted c. 268A, it specified that the word "compensation" should be read to include "any money, thing of value *or economic benefit* conferred on *or received* by any person in return for services rendered or to be rendered by himself or another" (emphasis supplied). G. L. c. 268A, § 1 (*a*). We have recognized that the word "compensation," as defined by c. 268A, § 1, is a word that imports a broader meaning than the word "salary." In *Commonwealth* v. *Canon*, 373 Mass. 494, 497 (1977), cert. denied, 435 U.S. 933 (1978), we recognized that even the receipt of an intangible financial opportunity may be found to be within the meaning of the word "compensation."

The Appeals Court also has recognized the broad import of the word "compensation." See *Indorato* v. *Contributory Retirement Appeal Bd.*, 20 Mass. App. Ct. 935, 936 (1985) (Perry Law held to bar payment of superannuation retirement benefits to State police officer who retired while suspended); *Brown* v. *Taunton*, 16 Mass. App. Ct. 614, 620-621 (1983) (indicted building inspector not entitled to sick leave with full pay otherwise due). We agree with the Appeals Court that the word "compensation" should be read in light of the purpose of c. 268A, § 25, which is to effect "a complete severance of the relationship between public employer and employee." *Brown* v. *Taunton*, *supra* at 620. As was noted in *Brown*, the use of the words "any compensation or salary" in § 25 is unqualified. In addition, the economic reality is that an employer's obligation to pay employment security benefits is not incurred except as a result

of an employee's having rendered wage-earning services to the employer. See G. L. c. 151A, §§ 14 and 14A. Thus, when such benefits are paid out by an employer,[8] it is clear that they are paid "in return for services rendered."

If we were to accept the division's contention that unemployment benefits are not "compensation" within the meaning of c. 268A because such benefits are in lieu of wages lost due to unemployment, and not monies received as the result of services rendered, "compensation" would encompass little more than the paycheck an employee receives in return for a number of hours' labor. The text of § 25, however, reveals a much broader intent.

The division has suggested in its brief that, if we uphold the District Court's denial of benefits, we shall be creating a new category of disqualification for benefits, because an individual indefinitely suspended under G. L. c. 268A, § 25, would be denied benefits, while an individual in the private sector indefinitely suspended while under indictment for the same crime would receive benefits under G. L. c. 151A, § 25 (*f*), and 430 Code Mass. Regs. § 4.04 (6) (1981). The power to create such new categories, the division maintains, lies not with its own board of review nor with this court, but with the Legislature. As counsel for the division conceded at oral argument, however, it is possible that the Legislature intentionally created this disqualification for suspended public officials when it enacted § 25 of c. 268A. We conclude that the Legislature did intend to preclude the allowance of employment security

---

[8] Employment security benefits are paid to claimants in the first instance by the division itself. G. L. c. 151A, § 22. However, it is not disputed that the ultimate payors of such benefits are the employers, who are either taxed for contributions pursuant to c. 151A, § 14, or billed on a payment per claim basis pursuant to c. 151A, § 14A. The city falls in the latter category of payors.

benefits to public officials suspended under G. L. c. 268A, § 25.[9]

*Judgments affirmed.*

---

[9] The division contends that, while it could defer determination of the eligibility of suspended claimants until criminal charges are resolved, such a "wait and see" approach conflicts with claimants' rights to a prompt hearing and payment of benefits "when due" as guaranteed by 42 U.S.C. § 503(a)(1) (1982) and 20 C.F.R. § 640.1(a)(2) (1986). While this question was not raised or decided below and is therefore not properly before the court, we note that the division's reliance on *Jenkins* v. *Bowling,* 691 F.2d 1225 (7th Cir. 1982), is misplaced because the Illinois statute there at issue and the relevant statutory design in this Commonwealth are not substantially similar.