NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12204

BRIAN BENOIT  vs.  CITY OF BOSTON
(and a consolidated case[1]).


Suffolk.     January 9, 2017. - May 16, 2017.

Present:  Gants, C.J., Lenk, Hines, Gaziano, Lowy, & Budd, JJ.


Workers' Compensation Act, Compensation, Public employee,
     Decision of Industrial Accident Reviewing Board, Insurer.
     Public Employment, Suspension, Worker's compensation.
     Municipal Corporations, Officers and employees.



Civil action commenced in the Superior Court Department on
November 24, 2014.

A motion to dismiss was heard by Linda E. Giles, J.

Civil action commenced in the Superior Court Department on
November 3, 2015.

A motion to dismiss was heard by Paul D. Wilson, J.

The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


John M. Becker for the plaintiff.
E. David Susich (Thomas A. Pagliarulo also present) for the
defendant.

_____

     [1] The consolidated case involves the same parties.

LENK, J.  On September 5, 2011, after working almost twenty years as an emergency medical technician and paramedic for the defendant city's emergency medical services (EMS), the plaintiff suffered an incapacitating ankle injury while transporting a patient.  Unable to work, he received workers' compensation payments for almost one year pursuant to G. L. c. 152, the workers' compensation act.

Learning that the plaintiff had been indicted on October 31, 2012, on charges relating to misuse of controlled substances intended for EMS patients, the defendant suspended him indefinitely without pay pursuant to G. L. c. 268A, § 25 (suspension statute).  After the defendant, a self-insured municipal employer, discontinued the plaintiff's workers' compensation payments, he took the matter to the Department of Industrial Accidents (DIA); the defendant was ordered to restore those payments.

When the defendant did not comply with the DIA order, the plaintiff sought enforcement in the Superior Court pursuant to G. L. c. 152, § 12 (1).  The defendant argued then, as now, that the provision of the suspension statute requiring that suspended public employees "shall not receive any compensation or salary during the period of suspension" prevails over the requirements of the worker's compensation act, and that the DIA order requiring proscribed payments should accordingly not be

enforced.  A Superior Court judge agreed and dismissed the enforcement actions.[2]  We conclude that workers' compensation benefits are not "compensation" as defined in the suspension statute, because they are not payments made "in return for services rendered."  G. L. c. 268A, § 1 (a).  The Superior Court actions brought by the plaintiff to enforce the orders of the DIA accordingly were dismissed in error.[3]

1.  Background.[4]  The plaintiff began working for the city of Boston as an emergency medical technician in 1996, and was promoted to paramedic in 2004.  On September 5, 2011, he suffered a significant ankle injury while helping bring a patient to his ambulance.  As a result of the plaintiff's

---

[2] The plaintiff brought two enforcement actions; one during his suspension and one after his resignation from the defendant's employment.  He argued in the latter action that G. L. c. 268A, § 25 (suspension statute), no longer precluded him from receiving workers' compensation payments because he was no longer suspended.

[3] Given our conclusion, we do not reach the plaintiff's contentions that attorney's fees, expenses, and court fees do not constitute compensation under G. L. c. 268A, § 25, nor his argument that he is entitled to workers' compensation for the periods before and after his suspension.

[4] We accept as true the facts alleged in the plaintiff's complaint.  See Burbank Apartments Tenant Ass'n v. Kargman, 474 Mass. 107, 116 (2016).

incacitation, the defendant paid workers' compensation benefits to him from September 5, 2011, until August 4, 2012.[5]

In August, 2012, the defendant notified the plaintiff that his workers' compensation payments would be terminated.[6] The plaintiff filed a claim contesting the termination of the payments with the DIA on October 23, 2012. Just over a week later, the plaintiff was indicted on seventy-three counts of criminal misconduct involving controlled substances in his ambulance. The defendant suspended the plaintiff's employment shortly thereafter pursuant to the suspension statute.[7]

The DIA conducted a hearing regarding the plaintiff's workers' compensation claim on September 30, 2013. On October

---

[5] The defendant is obliged to make workers' compensation payments to its employees who suffer job-related injuries because it is a "self-insurer" under the workers' compensation act. See G. L. c. 152, § 25A.

[6] The defendant apparently contested the plaintiff's claim that the injury was accidental. Upon the defendant's suspension in connection with criminal charges, the defendant asserted that the payments were also proscribed by virtue of the suspension statute.

[7] General Laws c. 268A, § 25, provides in relevant part:

"An officer or employee of a county, city, town or district, howsoever formed, including, but not limited to, regional school districts and regional planning districts, or of any department, board, commission or agency thereof may, during any period such officer or employee is under indictment for misconduct in such office or employment or for misconduct in any elective or appointive public office, trust or employment at any time held by him, be suspended by the appointing authority, whether or not such appointment was subject to approval in any manner."

6, 2014, the DIA ruled in favor of the plaintiff and ordered the defendant to resume making workers' compensation payments. The defendant appealed from the DIA's decision and did not comply with the order.[8] On November 24, 2014, the plaintiff brought an action in the Superior Court to enforce the DIA's order against the defendant pursuant to G. L. c. 152, § 12 (1).[9] A Superior Court judge granted the defendant's subsequent motion to dismiss on the ground that the suspension statute prohibited the plaintiff from receiving workers' compensation payments while he was suspended because it constituted "compensation" under the statute. See G. L. c. 268A, § 25 ("Any person [suspended pursuant to the statute] shall not receive any compensation or salary during the period of suspension . . ."). The plaintiff appealed from the decision.

On August 5, 2015, the plaintiff pleaded guilty to one felony count and seventeen misdemeanor counts and resigned from

---

[8] The review board of the DIA eventually affirmed the order.

[9] The enforcement provision of the workers' compensation act, G. L. c. 152, § 12 (1), provides, in relevant part:

> "Whenever any party in interest presents a certified copy of an order or decision of a board member or of the reviewing board and any papers in connection therewith to the superior court department of the trial court for the county in which the injury occurred or for the county of Suffolk, the court shall enforce the order or decision, notwithstanding whether the matters at issue have been appealed and a decision on the merits of the appeal is pending."

his employment with the defendant.  He then brought another enforcement action in the Superior Court on the basis that the suspension statute no longer barred his compensation payments because he was no longer suspended.  A different Superior Court judge granted the defendant's subsequent motion to dismiss, concluding that the suspension statute still barred the plaintiff from receiving workers' compensation because his suspension had not been lifted prior to his resignation.  The plaintiff appealed from the ruling; his request that both cases be consolidated pursuant to Mass. R. A. P. 3 (b), 365 Mass. 845 (1974), was allowed in the Appeals Court.  We transferred the case from the Appeals Court on our own motion.

2.  Discussion.  Given that all of the plaintiff's objections to the two Superior Court judges' rulings concern questions of law, our review is de novo.  See Commonwealth v. Diggs, 475 Mass. 79, 81 (2016).  The plaintiff advances three claims in his appeal.  His main contention is that the judges erred in their determinations that workers' compensation payments are proscribed by the suspension statute, and in dismissing his enforcement actions on that basis.  He also contends both that G. L. c. 152, § 12 (1) ("the court shall enforce the order"), by its terms, requires the Superior Court to enforce his DIA order, and that the defendant waived its argument under the suspension statute by failing to raise it

before the DIA.  We first address only briefly the latter two issues and then turn to the matter of chief concern, viz., the apparent conflict between the workers' compensation act and the suspension statute.

a.  <u>Required enforcement of the DIA order pursuant to G. L. c. 152, § 12 (1)</u>.  The plaintiff maintains that the Superior Court judges were obliged to enforce the DIA's order pursuant to the unambiguous terms of G. L. c. 152, § 12 (1), and were required to do so irrespective of any potential conflict with the suspension statute.  This contention misses the mark.  The Superior Court, when asked to do so, must determine whether the statutory enforcement mechanism it is to employ conflicts with another potentially superseding statute.  See <u>Keenan, petitioner</u>, 310 Mass. 166, 179 (1941) (Superior Court "is a court of original and general jurisdiction and possesses the inherent powers of such a court under the common law, unless expressly limited, as well as those conferred by statute" [citation omitted]).  Language in the enforcement statute stating that a "court shall enforce" an order is not to the contrary -- it means only that, when asked to enforce the order, a Superior Court judge cannot second guess the merits of the DIA's decision.  That is not the situation here.

b.  <u>Waiver</u>.  The plaintiff also contends, similarly without merit, that the defendant waived its argument concerning the

suspension statute by failing to raise it at the administrative level. The DIA's jurisdiction, however, is limited to the interpretation and application of the workers' compensation act, and the defendant thus could not have raised the issue of G. L. c. 268A, § 25, before the DIA. See Hayes's Case, 348 Mass. 447, 452-453 (1965), quoting Levangie's Case, 228 Mass. 213, 216-217 (1917) ("The [Industrial Accident Board, a predecessor to the DIA,] 'is not a court of general or limited common[-]law jurisdiction; . . . it is purely and solely an administrative tribunal, specifically created to administer the [workers'] compensation act in aid and with the assistance of the Superior Court . . . , and as such possesses only such authority and powers as have been conferred upon it by express grant or arise therefrom by implication as necessary and incidental to the full exercise of the granted powers'"). Accordingly, the defendant appropriately raised the issue in the Superior Court.

c. Whether the suspension statute prohibits suspended employees from receiving workers' compensation. The plaintiff contends that workers' compensation does not constitute "compensation" within the meaning of the suspension statute. That statute states, in relevant part, that any employee suspended pursuant to it "shall not receive any compensation or salary during the period of suspension." G. L. c. 268A, § 25. The term "compensation" is in turn defined as "any money, thing

of value or economic benefit conferred on or received by any person in return for services rendered or to be rendered by himself or another." G. L. c. 268A, § 1 (a). We first set forth an overview of the relevant statutes.

i Statutory overview. 1. The suspension statute. The suspension statute, "which applies to county, municipal, and district officers, is identical in its operative language to G. L. c. 30, § 59, . . . which applies to officers and employees of the Commonwealth." Springfield v. Director of Div. of Employment Sec., 398 Mass. 786, 788 (1986), quoting Massachusetts Bay Transp. Auth. v. Massachusetts Bay Transp. Auth. Retirement Bd., 397 Mass. 734, 739 n.8 (1986). The suspension statute was enacted in 1972, see St. 1972, c. 257, to "remedy the untenable situation which arises when a person who has been indicted for misconduct in office continues to perform his public duties while awaiting trial . . . by allowing for the temporary removal of such employees from office, and by precluding the payment of compensation . . . during the period of their suspension." Springfield, supra at 788-789, quoting Massachusetts Bay Transp. Auth., supra at 739. Because the statute does not include any exception, it "is dominant in its purpose and its terms" [quotation omitted]. Springfield, supra at 789.

We have interpreted the term "compensation," as it appears in the suspension statute, as encompassing "a broader meaning than the word 'salary.'" Springfield, 398 Mass. at 790. The term is to be "read in light of" the purpose of the suspension statute, i.e. to effect "a complete severance of the relationship between public employer and employee." See id., quoting Brown v. Taunton, 16 Mass. App. Ct. 614, 620 (1983).

2. The worker's compensation act. The workers' compensation act, originally enacted in 1911, guarantees workers certain benefits as the exclusive remedy for injuries they suffer in the course of employment, regardless of the employer's fault. See Estate of Moulton v. Puopolo, 467 Mass. 478, 483 (2014), citing St. 1911, c. 751, pt. 1, § 5, and pt. 5, § 1. The act "was intended to guarantee that workers would receive payment for any workplace injuries they suffered, regardless of fault; in exchange for accepting the statutory remedies, the worker waives any common-law right to compensation for injuries." Estate of Moulton, supra. The workers' compensation scheme "provides predictability for both employee and employer, balancing protection for workers with certainty for employers." Id.

The worker's compensation act operates by requiring each employer in the Commonwealth to obtain workers' compensation coverage from an insurer that will make workers' compensation

payments to injured employees or, alternatively, to obtain a license "as a self-insurer" -- i.e., an employer that makes workers' compensation payments to its employees. See G. L. c. 152, § 25A. Failure to do so may result in, among other things, the imposition of civil penalties upon employers, who also may forfeit immunity from suits by employees. See G. L. c. 152, § 25C (11). An employee may opt out of the workers' compensation scheme and retain the right to sue the employer in tort by making such an intention clear in writing upon hire. See G. L. c. 152, § 24; Wentworth v. Henry C. Becker Custom Bldg. Ltd., 459 Mass. 768, 773 n.6 (2011).

Under the worker's compensation act, an employee who suffers an injury arising out of employment is entitled to an array of benefits depending on the nature of the injury. In general, an employee who suffers such an injury will recover medical expenses arising out of the injury, G. L. c. 152, § 30, and receive, for some period of time,[10] weekly payments based

---

[10] The period of time during which the injured employee will receive payments is dependent upon the extent and duration of the employee's incapacity for work. See G. L. c. 152, § 35 (compensation for partial incapacity extends to 260 weeks or to 520 "if an insurer agrees or an administrative judge finds that the employee has, as a result of a personal injury under [the act], suffered a permanent loss of seventy-five percent or more of any bodily function or sense specified in" G. L. c. 152, § 36); G. L. c. 152, § 34 (compensation for total incapacity extends to 156 weeks); G. L. c. 152, § 34A (compensation for total and permanent incapacity extends for entirety of employee's life).

upon the employee's salary prior to her injury. In the event of certain specific and debilitating injuries, employees are also to receive an additional lump sum payment. See G. L. c. 152, § 36. Should an employee succumb to a work related injury, certain survivors will receive weekly payments in the employee's stead. See G. L. c. 152, § 31.

ii. Analysis. The question before us is whether the meaning of the statutory term "compensation" in the suspension statute encompasses such workers' compensation benefits. It is axiomatic that "a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." Yeretsky v. Attleboro, 424 Mass. 315, 319 (1997), quoting Board of Educ. v. Assessor of Worcester, 368 Mass. 511, 513 (1975). "In interpreting the meaning of a statute, we look first to the plain statutory language." DiCarlo v. Suffolk Constr. Co., 473 Mass. 624, 629 (2016), quoting Worcester v. College Hill Props., LLC, 465 Mass. 134, 138 (2013). Applying these principles to the present case, we conclude that workers' compensation benefits do not fall within the ambit of the suspension statute.

While the statutory term "compensation" is defined broadly, see Springfield, 398 Mass. at 790, its scope is not unbounded. The Legislature defined "compensation" as "any money, thing of value or economic benefit conferred on or received by any person in return for services rendered" (emphasis added).  G. L. c. 268A, § 1 (a).  The phrase "in return for services rendered," given its plain meaning, denotes a reciprocal relationship between the benefits received and the services provided.  See, e.g., Killoran v. Commissioner of Internal Revenue, 709 F.2d 31, 31-32 (9th Cir. 1983) (taxicab driver's tips were paid "in return for services rendered" and were therefore income for Federal income tax purposes).  In order for a benefit to qualify as compensation that a suspended public employee may not receive, it must be provided as recompense for the employee's services, i.e., in return for services rendered.

How strictly that requisite reciprocity is to be understood is central to the question before us:  whether workers' compensation benefits are received in return for services the injured employee rendered.  If reciprocity means only payments akin to wages, the broad meaning of "compensation" intended by the Legislature would be vitiated.  On the other hand, if reciprocity could mean, as the defendant seems to suggest, any benefit stemming from a "but for" nexus formed by the employee relationship itself -- i.e., any benefit arising from even a

tangential connection to employee services -- the phrase "in return for services rendered" effectively would be written out of the statutory definition.  See Chatham Corp. v. State Tax Comm'n, 362 Mass. 216, 219 (1972) ("every word of a legislative enactment is to be given force and effect").

In determining that certain benefits constitute compensation under the suspension statute, our cases suggest a middle course, one which takes the phrase to mean a reciprocity where the benefits in question are interwoven with, and received primarily as a result of, services rendered.  Benefits in this category include sick pay, Brown, 16 Mass. App. Ct. at 620 (entitlement received as part of compensation package and provided in lump sum upon termination if not used); return on an investment received in exchange for technical advice given, Commonwealth v. Canon, 373 Mass. 494, 497 (1977), cert. denied, 435 U.S. 933 (1978) (investment opportunity in exchange for engineering advice by city engineer constituted compensation); and unemployment benefits, Springfield, 398 Mass. at 790-791 (employer obliged to pay such benefits as result of employee having rendered wage earning services to employer).  In each instance, the reason the employee received the benefit was primarily as the result of services he rendered as an employee.

The receipt of workers' compensation benefits differs from these because, while such benefits are triggered by injuries

that arise in the course of employment, see Derinza's Case, 229 Mass. 435, 441-442 (1918), they are not in exchange for services rendered during that employment. The reciprocal exchange that occurs in the workers' compensation context is not between services and benefits, but between the waived right to sue the employer in tort for injuries and the guarantee of benefits when injured. See Potomac Elec. Power Co. v. Director, Office of Workers' Compensation Programs, United States Dep't. of Labor, 449 U.S. 268, 282 n.24 (1980) ("Employees . . . give up the right of suit for damages for personal injuries against employers in return for the certainty of compensation payments as recompense for those injuries" [citation omitted]); Estate of Moulton, 467 Mass. at 483 ("in exchange for accepting the statutory remedies [of the workers' compensation act], the worker waives any common-law right to compensation for tort injuries"). The various payments, medical and otherwise, provide comprehensive recompense for "lost wages and lost earnings capacity and medical expenses resulting from work-related injuries." Neff v. Commissioner of the Dep't. of Indus. Accs., 421 Mass. 70, 75 (1995). Such payments are in the nature of insurance benefits received pursuant to a policy taken out by the employer for the employee's benefit, see Derinza's Case, 229 Mass. at 441; the policy is, in effect, purchased in consideration for the employee's waiver of his or her right to

sue the employer. Moreover, the workers' compensation act does not implicate the employer-employee relationship -- it concerns the relationship between an employee and her insurer. See Insurance Co. of the State of Penn. v. Great Northern Ins. Co., 473 Mass. 745, 750 (2016) ("although the employer purchases the workers' compensation policy, a workers' compensation insurer is directly liable to an injured employee for the workers' compensation benefits provided by law; the insurer does not reimburse the employer for its payment of these benefits").[11]

Our decision in Springfield, 398 Mass. at 790-791, is not to the contrary, notwithstanding certain superficial similarities between unemployment and workers' compensation benefits. Enacted in 1935, the unemployment compensation statute, G. L. c. 151A, § 24,[12] serves as a temporary economic stabilization mechanism for terminated employees who meet the statutory criteria. See id. (describing statutory criteria for benefits). The over-all "purpose of the law is to provide temporary relief for those who are realistically compelled to

_____

[11] The defendant's obligation to make workers' compensation payments to its employees stems from its role as a self-insurer under the worker's compensation act rather than its position as an employer.

[12] At that time, Federal law required for the first time that each State enact and administer a worker's compensation program. See Witte, Development of Unemployment Compensation, 55 Yale L.J. 21, 32-35 (1945) (describing development and implementation of "[F]ederal-[S]tate system of unemployment compensation").

leave work through no 'fault' of their own, whatever the source of the compulsion, personal or employer-initiated."  See Raytheon Co. v. Director of the Div. of Employment Sec., 364 Mass. 593, 596 (1974); G. L. c. 151A, §§ 29, 30.  Employers fund this mechanism, G. L. c. 151A, § 14, which is administered by the department of unemployment assistance, and employees do not contribute to it in any manner.  The employee gives up neither rights nor money to receive such benefits, which are, in effect, a statutorily mandated temporary extension of his or her compensation package beyond the employee's termination.  The receipt of such benefits is primarily as the result of services rendered during employment.

Because workers' compensation benefits do not constitute compensation for purposes of the suspension statute, that statute accordingly does not proscribe the receipt of such benefits by suspended employees.

3.  Conclusion.  The judgment is reversed and the matter is remanded to the Superior Court for further proceedings consistent with this opinion.

So ordered.