NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-13245

NATHANAEL PEREZ vs. DEPARTMENT OF STATE POLICE.

Middlesex.     October 3, 2022. - March 16, 2023.

Present: Budd, C.J., Gaziano, Lowy, Cypher, Kafker, Wendlandt, & Georges, JJ.

State Police. Police, Suspension, Compensation. Public Employment, Police, Suspension. Damages, Back pay. Statute, Construction.

Civil action commenced in the Superior Court Department on January 30, 2020.

The case was heard by Christopher K. Barry-Smith, J., on motions for summary judgment, and motions to vacate the judgment and for reconsideration were considered by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

David M. Bae for the plaintiff.
Daniel Brunelli for the defendant.

GEORGES, J. General Laws c. 30, § 59 (Perry Law), allows

the suspension without pay of a State employee who has been

indicted on criminal charges due to job-related misconduct, but

mandates back pay for the period of the suspension if the charges subsequently are "terminated without a finding or verdict of guilty."  In this case, we are asked to decide whether the remedy set forth in G. L. c. 30, § 59, must be applied to a trooper who had been suspended from his position without pay pursuant to article 6.2 of the State police rules and regulations (art. 6.2), a regulation that applies specifically to members of the State police.

The plaintiff, Nathanael Perez, is a State police trooper who was suspended from his position pursuant to art. 6.2 after he was indicted on charges relating to his performance in his former position as a Springfield police officer.  After the charges against Perez were dismissed, he requested back pay under the Perry Law.  Perez contends that the Perry Law applies to all State employees who have been suspended without pay because of a criminal indictment stemming from job-related misconduct.  The State police maintain that the Perry Law is discretionary; because the colonel of the State police (colonel) suspended Perez pursuant to art. 6.2, which details disciplinary proceedings for indicted troopers, but is silent with respect to back pay, they argue that Perez is not entitled to compensation for his period of suspension.

We conclude that when the colonel decided to suspend Perez, he had discretion to choose whether to invoke the Perry Law,

which applies to civil servants, or to proceed under art. 6.2, which is unique to the State police. Because the colonel opted to suspend Perez in accordance with art. 6.2, Perez was not entitled to back pay or other relief under the terms of the Perry Law. Accordingly, we affirm the Superior Court judge's order allowing the State police's motion for summary judgment and denying Perez's cross motion.

1. Background. On March 27, 2019, Perez was indicted by a grand jury on charges of perjury, misleading a police officer, and filing a false report, in connection with actions he took on April 8, 2015, in his then role as a Springfield police officer. On that day, Perez had responded to reports of physical altercations at two separate locations in Springfield. Both incidents involved off-duty police officers. Perez drafted two reports concerning the April 8 incidents, which mentioned the presence of the off-duty officers at the first incident but contained no mention of the off-duty officers' involvement in the second altercation. The charges against Perez were based on the contention that he knew off-duty police officers had been involved in the second altercation, but intentionally had omitted any mention of this from his report.

In the interim between the incidents in Springfield and the indictments, Perez had been sworn in as a State police trooper. As a result of Perez's indictment, State police Lieutenant

Colonel Philip R. Dowd notified Perez that the State police would be conducting a duty status hearing[1] to assess his fitness for duty as a trooper, pursuant to art. 6.2.1.[2]  At the hearing on March 29, 2019, the duty status board concluded that Perez should be suspended without pay, see art. 6.2.2; the suspension took effect the same day.

On January 3, 2020, Perez's motion to dismiss the indictments was allowed.  The motion judge concluded that the grand jury were not presented with sufficient evidence to establish probable cause that Perez had filed a false report.  Three days later, on January 6, 2020, Perez received notice of a second duty status hearing.  At that hearing, Perez was reinstated to full duty, effective immediately, because of the dismissal of the indictments.

Shortly thereafter, Perez sent an e-mail message to the chief legal counsel of the State police, requesting that the

---

[1] The employment disposition for a uniformed member of the State police is referred to as the trooper's "duty status"; reviews of duty statuses are conducted at duty status hearings by a duty status board, pursuant to art. 6.  The duty status board is charged with reviewing the facts presented at the hearing, making findings, and making recommendations to the colonel or to the superintendent of the State police, pursuant to art. 6.2.4.  Under art. 6.2.4, the duty status board has discretion to recommend that a trooper be continued on full duty, placed on restricted duty, suspended with pay, or suspended without pay.

[2] See note 7, infra.

State police compensate him for the approximately ten months that he was suspended and also that the period of suspension be counted toward his retirement service, seniority, vacation time, and other benefits.[3]  The State police rejected Perez's requests on the asserted ground that the Perry Law does not apply to suspensions under art. 6.2.  In their reply, the State police asserted that the Perry Law is "permissive," in that an employer may, but is not required to, suspend an indicted employee pursuant to the Perry Law.  They also argued that they had not invoked the Perry Law when they suspended Perez, because they had suspended him from active duty pursuant to art. 6.2; nothing in the language of art. 6.2 requires that a suspended trooper receive compensation if the trooper subsequently is vindicated.

Perez then commenced an action in the Superior Court, seeking a judgment declaring that, pursuant to the Perry Law, he was entitled to payment of past wages by the State police, and to his lost seniority, for the period during which he had been suspended without pay.  The parties filed cross motions for

---

[3] In his initial correspondence with the State police, Perez's attorney cited G. L. c. 268A, § 25, a complementary statute that applies to county, municipal, and school or planning district employees, as the purported basis for reinstatement of Perez's back pay.  The State police noted in response that the applicable statute for State employees is G. L. c. 30, § 59, the Perry Law, rather than G. L. c. 268A, § 25.  Since then, Perez has maintained that he is owed back pay under the Perry Law.

summary judgment. Concluding that Perez was not entitled to past compensation because he had been suspended under the State police rules and regulations, and not under the Perry Law, a Superior Court judge allowed the State police's motion for summary judgment and entered a judgment declaring that Perez was not entitled to compensation or to any other relief under G. L. c. 30, § 59. Perez sought reconsideration of the judge's ruling on the cross motions for summary judgment and to vacate the entry of judgment. Both motions were denied. Perez appealed from the denials to the Appeals Court, and we transferred the case to this court on our own motion.

2. Statutory provisions. The issue before us involves the interplay between the Perry Law, G. L. c. 30, § 59, and the State police regulatory scheme for personnel administration.

a. Perry Law. General Laws c. 30, § 59, the Perry Law, provides that the "appointing authority" of a State employee may suspend the employee "during any period such . . . employee is under indictment" for misconduct related to the employee's then-current State employment or to any prior public office.[4] G. L.

---

[4] General Laws c. 30, § 59, provides:

"An officer or employee of the commonwealth, or of any department, board, commission or agency thereof, or of any authority created by the general court, may, during any period such officer or employee is under indictment for misconduct in such office or employment or for misconduct

in any elective or appointive public office, trust or employment at any time held by him, if he was appointed by the governor, be suspended by the governor, whether or not such appointment was subject to the advice and consent of the council or, if he was appointed by some other appointing authority, be suspended by such authority, whether or not such appointment was subject to approval in any manner.  Notice of said suspension shall be given in writing and delivered in hand to said person or his attorney, or sent by registered mail to said person at his residence, his place of business, or the office or place of employment from which he is being suspended.  Such notice so given and delivered or sent shall automatically suspend the authority of said person to perform the duties of his office or employment until he is notified in like manner that his suspension is removed. . . .

"Any person so suspended shall not receive any compensation or salary during the period of such suspension, nor shall the period of his suspension be counted in computing his sick leave or vacation benefits or seniority rights, nor shall any person who retires from service while under such suspension be entitled to any pension or retirement benefits, notwithstanding any contrary provisions of law, but all contributions paid by him into a retirement fund, if any, shall be returned to him, subject to [G. L. c. 32, § 15]. . . .

"A suspension under this section shall not, in any way, be used to prejudice the rights of the suspended person either civilly or criminally.  During the period of any such suspension, the appointing authority may fill the position of the suspended officer or employee on a temporary basis, and the temporary officer or employee shall have all the powers and duties of the officer or employee suspended.

". . .

"If the criminal proceedings against the person suspended are terminated without a finding or verdict of guilty on any of the charges on which he was indicted, his suspension shall be forthwith removed, and he shall receive all compensation or salary due him for the period of his suspension, and the time of his suspension shall count in determining sick leave, vacation, seniority and other

c. 30, § 59, first par. See St. 1962, c. 798. An employee "so suspended" under the Perry Law "shall not receive any compensation or salary" during "such suspension." G. L. c. 30, § 59, second par. If the criminal proceedings are terminated without a guilty finding or verdict, the employee's suspension "shall be forthwith removed" and the employee "shall receive" back pay for the period of the suspension. G. L. c. 30, § 59, fifth par. The Perry Law requires that the employee receive written notice of the suspension, which automatically is in effect by the employee's receipt of the notice. G. L. c. 30, § 59, first par. A copy of the notice also must be filed with the Secretary of the Commonwealth. Id.

The Perry Law has had minor amendments since its enactment, namely in 1963, see St. 1963, c. 829, when the written notice requirement was added; in 1964, see St. 1964, c. 528, when the Legislature broadened the types of indictments that permitted suspension; and in 2004, see St. 2004, c. 149, § 63, when a requirement was added that the employer notify the retirement system of the suspension. Other than these amendments, the Perry Law has remained unchanged since its enactment vis-à-vis the authority it grants State employers to suspend employees who

rights, and shall be counted as creditable service for purposes of retirement."

are indicted for job-related misconduct, and the relief it requires if those employees are not convicted.

In 1972, the Legislature enacted G. L. c. 268A, § 25, which is essentially identical in its operative language to the Perry Law, and applies to county, municipal, and school or planning district employees.  See St. 1972, c. 257; Springfield v. Director of the Div. of Employment Sec., 398 Mass. 786, 788 (1986).  Since their enactments, both the Perry Law and G. L. c. 268A, § 25, have been invoked on a consistent basis to suspend public employees who have been indicted for job-related misconduct in the Commonwealth.  See, e.g., Benoit v. Boston, 477 Mass. 117, 119-120 (2017) (suspension of emergency medical technician under G. L. c. 268A, § 25); Letteney v. Commissioner of Commerce & Dev., 358 Mass. 10, 10-11 (1970) (director of division of urban and industrial renewal of State Housing Board was suspended under G. L. c. 30, § 59).

b.  Article 6.2 and G. L. c. 22C.  State police troopers are exempt from the provisions of the civil service statute. See G. L. c. 22C, § 10 (appointment of State police troopers is exempt from requirements of G. L. c. 31).  Instead, they are governed by the State police statute, G. L. c. 22C, which incorporates specific aspects of the civil service statute into the governance of the State police.  Under G. L. c. 22C, § 3, the colonel has authority to promulgate rules and regulations

for the "government of the department" and the discipline of its employees. See St. 1991, c. 412, § 22. The head of the State police has wielded this authority in some fashion since 1922. See O'Hara v. Commissioner of Pub. Safety, 367 Mass. 376, 380 (1975) (original rules and regulations were adopted from Manual of Courts Martial of United States Army). Currently, the colonel is authorized to "make rules and regulations for the force, including matters pertaining to the discipline, organization, government, training, compensation, equipment, rank structure, and means of swift transportation." G. L. c. 22C, § 10. Any member of the State police who violates these rules and regulations "shall be subject to discipline and discharge in accordance with said rules and regulations." Id.

"[A] properly promulgated regulation has the force of law . . . and must be accorded all the deference due to a statute." Borden, Inc. v. Commissioner of Pub. Health, 388 Mass. 707, 723, cert. denied sub nom. Formaldehyde Inst., Inc. v. Frechette, 464 U.S. 936 (1983).

Here, there is no dispute that art. 6.2 has been promulgated properly pursuant to the colonel's "broad grant of authority" under G. L. c. 22C, which provides the colonel "a wide range of discretion in establishing the parameters" of his power to impose disciplinary policies on the State police force. See Provencal v. Commonwealth Health Ins. Connector Auth., 456

Mass. 506, 514 (2010), quoting Levy v. Board of Registration & Discipline in Med., 378 Mass. 519, 525 (1979).  The Legislature has recognized that the colonel has a need for such wide discretion in ensuring that the State police are able to accomplish their mission, based on their status as "traditionally an elite force subject to more arduous duties than other [police officers] and to quasi military disciplinary regulations."  O'Hara, 367 Mass. at 380.  "The primary function of the Uniformed Branch of the Massachusetts State Police is to protect persons and property and maintain law and order. . . . '[S]ervice in this branch is, or can be, arduous'" (citation omitted).  Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 310 (1976).  As a result, the Legislature has acted to accommodate the need for self-administering systems of discipline for State police troopers, in conjunction with, but separate from, the general civil service laws.  See G. L. c. 22C, §§ 3, 10.  While the State police rules and regulations have changed over the past century, this court consistently has recognized their validity as a distinct substantive and procedural system for day-to-day governance of the State police.[5]

---

[5] See, e.g., Commissioner of Pub. Safety v. Treadway, 368 Mass. 155, 160-161 (1975) (upholding finding of State police trial board that charge against uniformed member who received stolen goods was supported by evidence); O'Hara, 367 Mass. at 377, 384 (upholding as "appropriate" State police rules invoked

Article 6, which contains regulations establishing disciplinary procedures and temporary relief from duty for uniformed members of the State police, details the procedures by which such members[6] may be investigated, and their misconduct adjudicated.[7]  Article 6.2 authorizes a division commander, with

in suspending without pay trooper who became candidate for, and then was elected to, local office); Concannon v. Commissioner of Pub. Safety, 324 Mass. 503, 507 (1949) (petitioner's rights were not prejudiced where plaintiff was discharged in compliance with State police rules and regulations); Cournoyer v. Department of State Police, 93 Mass. App. Ct. 90, 93 (2018) (deferring to colonel's discretion in penalizing failure to meet State police training requirements); Fisher v. Lint, 69 Mass. App. Ct. 360, 367-368 (2007) ("the State police trial board possesses the authority and provides the procedural protections that differentiates a quasi judicial board from one that merely performs an administrative function").

[6] Article 6 applies to "members," who are defined in art. 1 as "uniformed members."  General Laws c. 22C, § 13 (b), also explicitly references uniformed members.  Uniformed members are defined as members of the State police appointed pursuant to G. L. c. 22C, § 10.  For clarity, we refer to the uniformed members of the State police as "troopers."

[7] Article 6.2.1 provides, in pertinent part:

"A Division Commander, with the approval of the Colonel/Superintendent, may convene a duty status hearing relative to the member's duty status if:

"[t]he member is the subject of a criminal investigation, is arrested or indicted or, if a criminal complaint or warrant is issued against the member; or

"[t]he member is the subject of an internal investigation; or . . .

"[e]xceptional circumstances exist which warrant such duty status hearing."

the approval of the colonel, to convene a duty status hearing for a uniformed member of the State police if the trooper is arrested or indicted.  At that hearing, the trooper may respond to the allegations.  See art. 6.2.2.  Following the hearing, the duty status board  may recommend that the trooper either be continued on full duty, placed on restricted duty, suspended with pay, or suspended without pay.  See art. 6.2.4.  The duty status board also may refer the trooper to the State police surgeon for an evaluation of the trooper's fitness for duty, or to the employee assistance unit for further intervention.  All duty status recommendations are subject to the colonel's approval.  See art. 6.2.5.  Article 6.2 is silent regarding whether members who have been suspended without pay are entitled to receive back pay if the suspension is lifted.

At the time that Perez was suspended, a trooper whose conduct had been adjudicated by a duty status hearing had the right to appeal from the colonel's decision regarding the trooper's duty status to the Superior Court; there was no statutory exception granting troopers such as Perez rights of appeal from duty status hearings to the Civil Service Commission, as there are rights of appeal from trial board hearings.  See G. L. c. 22C, § 13, as amended by St. 2002,

c. 43.[8]  General Laws c. 22C, § 43, provides that "[a]ny person affected by an order of the [State police]" may "appeal to the colonel," who shall then grant a hearing and may "amend, suspend or revoke such order."  Any person "aggrieved by an order approved by the colonel may appeal to the [S]uperior [C]ourt" within fifteen days of the order.  Id.  See Doherty v. Civil Serv. Comm'n, 486 Mass. 487, 495 (2020) (G. L. c. 22C, § 43, expressly creates "internal appellate right[]" to hearing before colonel that "provide[s] State police troopers protection against less significant forms of discipline").

3.  Discussion.  We review questions of statutory interpretation de novo.  Hovagimian v. Concert Blue Hill, LLC, 488 Mass. 237, 240 (2021).

"A fundamental principle of statutory interpretation 'is that a statute must be interpreted according to the intent of

---

[8] The 2020 criminal justice act amended G. L. c. 22C, § 13, by codifying the duty status hearing procedure in G. L. c. 22C, § 13 (b).  Currently, G. L. c. 22C, § 13 (b), explicitly provides that administrative suspension without pay from a duty status hearing "shall not be appealable under [G. L. c. 31 §§ 41-45,]" of the civil service statute.  The suspension may be appealed to the Superior Court, as provided in G. L. c. 22C, § 43.  In addition, a suspended member may seek further review by the colonel one year from the date of the administrative suspension, and every year after, or sooner if there is a material change in circumstances.  Moreover, the colonel's review of the original order ultimately may be appealed under the civil service statute.  Compare G. L. c. 22C, § 13 (b), as amended by St. 2002, c. 43, with G. L. c. 22C, § 13 (b), as amended through St. 2020, c. 253, § 54.

the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated.'"  Mahan v. Boston Retirement Bd., 490 Mass. 604, 613 (2022), quoting Harvard Crimson, Inc. v. President & Fellows of Harvard College, 445 Mass. 745, 749 (2006).  "[W]e begin with the canon of statutory construction that the primary source of insight into the intent of the Legislature is the language of the statute."  Deutsche Bank Nat'l Trust Co. v. Fitchburg Capital, LLC, 471 Mass. 248, 253 (2015), quoting International Fid. Ins. Co. v. Wilson, 387 Mass. 841, 853 (1983).  If the language is clear and unambiguous, it is conclusive as to legislative intent.  Deutsche Bank Nat'l Trust Co., supra.

The first paragraph of the Perry Law provides, in relevant part, that a State employee "may . . . be suspended" by the employer "during any period" in which the employee is "under indictment" for misconduct related to the employee's then-current State employment or to any prior public office.  See G. L. c. 30, § 59.  Perez argues that the use of the word "may" in the first paragraph of the Perry Law means that the colonel has discretion only in deciding whether to suspend a trooper who has been indicted for job-related misconduct.  Perez contends

that, once a trooper has been suspended without pay for suspected criminal misconduct related to the trooper's position, the trooper falls within the scope of the Perry Law, which requires the State police to reimburse the trooper for the compensation the trooper did not receive while suspended.[9]

Conversely, the State police construe the term "may" in the first paragraph of the Perry Law as an indication that the colonel is permitted, but is not required, to invoke the Perry Law in order to suspend a trooper who has been indicted for misconduct related to the trooper's position or a prior public

---

[9] None of the cases Perez cites addresses the issue we confront here:  whether the requirements of the Perry Law are mandatory where State employees charged with job-related misconduct are suspended pursuant to other statutory or regulatory provisions concerning employee discipline.  For example, some of the cases upon which Perez relies are inapposite because the State employees actually had been suspended pursuant to the Perry Law, and thus the requirements did apply.  See, e.g., Madden v. Secretary of Pub. Safety, 412 Mass. 1010, 1010 (1992) ("suspension was based on G. L. c. 30, § 59"); Bessette v. Commissioner of Pub. Works, 348 Mass. 605, 606 (1965) ("The Commissioner acted under G. L. c. 30, § 59"); Indorato v. Contributory Retirement Appeal Bd., 20 Mass. App. Ct. 935, 936 (1985) ("plaintiff's superannuation retirement benefits were correctly denied under § 59").

In other cases, the remedy of back pay set forth in the Perry Law was held not to apply to the facts of the suspension. See, e.g., Brittle v. Boston, 439 Mass. 580, 589 (2003) (employee's criminal proceedings were not considered terminated for purposes of G. L. c. 268A, § 25).  In addition, Perez cites a number of trial court cases that are not binding precedent.

office;[10] only if the colonel chooses to invoke the Perry Law must the State police follow its mandates, including awarding back pay.  We agree.

This court consistently has interpreted statutory language using the word "may" as "generally permissive, reflecting the Legislature's intent to grant discretion or permission to . . . authorize an act."  See, e.g., Commonwealth v. Dalton, 467 Mass. 555, 558 (2014), citing School Comm. of Greenfield v. Greenfield Educ. Ass'n, 385 Mass. 70, 81 (1982) ("the word 'may' does not impose a mandate but simply authorizes an act").  See also Commonwealth v. Chamberlin, 473 Mass. 653, 660 (2016) ("By using the word 'may' here, the Legislature indicated no more than that the government may, but need not, [take action] by using this [statutory] tool").  Specifically, we have interpreted the word "may" to be "permissive," in that actors are permitted to invoke the legal authority, but are free to invoke and follow the requirements of another authority if it is available to them. See id.

In Fernandes v. Attleboro Hous. Auth., 470 Mass. 117, 123-124 (2014), for example, this court concluded that although the

_____

[10] That the State police properly could have used the Perry Law to suspend Perez due to his indictment stemming from conduct as a municipal police officer is not disputed; the issue is whether the State police were required to apply the Perry Law in imposing the suspension.

general civil service act, G. L. c. 31, §§ 41-45, and the Wage Act, G. L. c. 149, §§ 148, 148A, 150, both involve the rights of tenured employees, neither statute mandates that it is the only path by which an aggrieved employee may seek redress.  We observed that the "language [in the civil service law] stating that an aggrieved employee 'may' file a complaint with the [Civil Service Commission] strongly suggests that the Legislature has not granted exclusive authority over all challenged employment actions to the commission" (emphasis in original).  Id. at 124.  In reaching this conclusion, we relied upon the determination that the two statutes "have distinct purposes and, as a consequence, provide different remedies for the violation of their statutory mandates."  Id. at 126.  The language of the statutes at issue demonstrated "no intent on the part of the Legislature" to preclude a suspension under a different legal authority with different procedures and remedies.  Id. at 127.

In a similar vein, our case law interpreting G. L. c. 268A, § 25, which authorizes district, local, and municipal employers to suspend employees who are indicted due to job-related misconduct, further supports our interpretation that the Perry Law is a permissive statute.  The Appeals Court has examined the interaction of G. L. c. 268A, § 25, which governs the suspension of "district" employees such as school districts and regional

planning districts, and the provisions of G. L. c. 71, § 42D (school district suspension statute). The school district suspension statute provides that a superintendent "may, for good cause, require the immediate suspension of any employee" for a period of up to one month. The Appeals Court repeatedly has determined that the existence of neither G. L. c. 268A, § 25, nor the school district suspension statute precludes application of one over the other.

In Dupree v. School Comm. of Boston, 15 Mass. App. Ct. 535, 540 (1983), for instance, the Appeals Court concluded that "the remedy in [the school district suspension statute] does not preclude the application of G. L. c. 268A, § 25." The court reasoned that G. L. c. 268A, § 25, "provides a sensible supplement by the Legislature to the provisions" of the chapter of the General Laws concerning public school administration. Id. Otherwise, "the only remedy available to remove a teacher indicted for a drug felony from the payroll, or perhaps even from the classroom, . . . would be dismissal under G. L. c. 71, § 42." Id. Accord Perryman v. School Comm. of Boston, 17 Mass. App. Ct. 346, 350 n.7 (1983) ("where a teacher is suspended for grounds set out in an indictment, the cause for the suspension . . . will nearly always continue beyond the limited suspension period contained in § 42D"). General Laws c. 268A, § 25, permits school district employers to suspend employees who

have been indicted for job-related misconduct, but, like the Perry Law, it does not preclude school districts from choosing to employ a different tool, the school district suspension statute, which the Legislature also has afforded them for disciplining their employees.  See Serrazina v. Springfield Pub. Sch., 80 Mass. App. Ct. 617, 618 n.4 (2011) (school district has choice of which suspension statute to invoke).

We similarly understand the Legislature's use of the word "may" in the Perry Law as permitting, but not requiring, that the State police suspend a trooper who has been indicted for misconduct in office consistent with the terms of the Perry

Law.[11]  If a State agency has a different power of suspension,[12] independent of the Perry law, such as the power the State police possess under art. 6.2, the State agency may choose to employ that power and any procedural requirements thereunder.

The permissive use of the term "may" in the first sentence of the Perry Law stands in contrast to the Legislature's use of the word "shall" in the remainder of the provision.  For

_____

[11] Responding to a request for guidance on the proper interpretation of the Perry Law in the years after it was adopted, the Attorney General noted:

> "Suspension of an employee [under the Perry Law] is only permissive.  The statute says 'may . . . suspend.'  The use of the word 'may' in a statute commonly imports discretion. . . .  I recognize that in most situations where an officer or employee of the Commonwealth is indicted for misconduct in connection with his office or employment an appointing authority will wish to avail itself of G. L. c. 30, § 59[,] and suspend the officer or employee.  Nonetheless, in exceptional circumstances an appointing authority may have sound reasons for continuing the employment of the indicted officer or employee.  I find nothing in the statute that requires a different construction."

Rep. A.G., Pub. Doc. No. 12, at 164 (1967).

[12] Absent any legal authority granting a State agency a specific procedure for suspending employees, the general civil service statute would be applicable.  See G. L. c. 31, §§ 41-45.  To suspend a tenured employee covered by the civil service laws for more than five days, the employee must be given written notice and a full hearing in front of the appointing authority.  See G. L. c. 31, § 41.  Such suspension decisions are appealable to the Civil Service Commission, G. L. c. 31, § 43, and the commission's decision is reviewable by the Superior Court, see G. L. c. 31, § 44; Bessette, 348 Mass. at 608 (noting that Perry Law "was applicable to permit the suspension of the petitioner without compliance with [the civil service hearing procedure]").

example, notice of the suspension "shall" be delivered in writing and "shall" be filed with the Secretary of the Commonwealth. G. L. c. 30, § 59, first par. Delivery of the notice "shall automatically suspend" the employee. Id. The suspended employee "shall" not receive compensation, G. L. c. 30, § 59, second par., but "shall" be returned to the position, and "shall" receive back pay, if the criminal proceedings do not result in a guilty verdict or finding, G. L. c. 30, § 59, fifth par. "It is axiomatic in statutory construction that the word 'shall' is an imperative . . . ." School Comm. of Greenfield, 385 Mass. at 81.

The Legislature's use of "shall" in the Perry Law establishes procedural and remedial requirements to which State employers (including the State police) must adhere only once they have chosen to invoke the Perry Law in suspending an employee. If a different legal authority is invoked when suspending an employee, the provisions of the Perry Law are not applicable.

"[I]t is our task, to the extent possible, to construe the rule and the statute to constitute a harmonious whole consistent with the legislative purposes disclosed, and to give reasonable effect to both." Boston Police Patrolmen's Ass'n v. Boston, 367 Mass. 368, 373 (1975). In light of its plain language, we conclude that the Perry Law does not preclude other, properly

promulgated legal authorities that authorize State employers to suspend their employees, nor are the back pay provisions of the Perry Law implicated where those employers invoke other legal authorities when suspending their employees. See Boston Police Patrolmen's Ass'n, supra.

The fundamental "purpose of [the Perry Law] is to remedy the untenable situation which arises when a person who has been indicted for misconduct in office continues to perform his public duties while awaiting trial." Massachusetts Bay Transp. Auth. v. Massachusetts Bay Transp. Auth. Retirement Bd., 397 Mass. 734, 739 (1986), citing Reynolds v. Commissioner of Commerce & Dev., 350 Mass. 193, 194, cert. denied, 384 U.S. 1001 (1966), and Bessette v. Commissioner of Pub. Works, 348 Mass. 605, 609 (1965). Prior to the enactment of the Perry Law, an appointing authority "had no power to suspend an indicted employee save for the lengthy process of removal and suspension" under the general civil service law. See Rep. A.G., Pub. Doc. No. 12, at 174 (1963). See also G. L. c. 31, §§ 41-45 (detailing procedural requirements in civil service law for disciplining employees). The Perry Law "addresse[d] this problem by allowing for the temporary removal of such employees from office, and by precluding the payment of compensation and the awarding of retirement benefits during the period of their suspension." Massachusetts Bay Transp. Auth., supra.

Otherwise put, the Perry Law "protects the public interest by preventing State officials from engaging in their duties of office while under the cloud of indictment.  At the same time, it protects the rights and interests of such officials by providing for automatic reinstatement to their positions and restoration of employment benefits upon vindication."  Indorato v. Contributory Retirement Appeal Bd., 20 Mass. App. Ct. 935, 936 (1985).  The distinct processes of the Perry Law accord with its distinct purpose:  that of a new tool that allowed State officials to respond swiftly when their employees were indicted for job-related misconduct, but that left employers liable for compensation of their vindicated employees, and afforded those employees recompense in lieu of more involved presuspension procedures.  See Reynolds, 350 Mass. at 195 ("In effect, with respect to indicted officials . . . , [the Perry Law] merely substitutes for the procedures of [G. L. c. 31, § 43 (a)], other procedures affording due process of law to the suspended official").  The initial expediency gained by an employer using the Perry Law is balanced by the chance that a vindicated employee will have to be made whole after termination of the suspension.

By the same token, art. 6.2 allows the colonel to respond swiftly to instances of a trooper who has been indicted for misconduct in office, but its provisions for a hearing, the

multiple authorities involved, and the appeals process allow for more deliberation before any final action is taken against the trooper.  Article 6.2 protects the interests of the trooper as a member of a quasi military agency charged with ensuring law and order in the Commonwealth, while also ensuring the colonel's ability as head of that agency to discipline employees.  Thus, the Perry Law and art. 6.2 "have distinct purposes and, as a consequence, provide different remedies" that balance the rights and duties of employers and employees differently, yet sufficiently.  See Fernandes, 470 Mass. at 126.

Here, Perez is not entitled to back pay for the period of his suspension, because he was suspended pursuant to art. 6.2, not the Perry Law.

Judgment affirmed.